[Crim. No. 7138. In Bank. Nov. 20, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER EMMETT McFARLAND, Defendant and Appellant.

Walter Emmett McFarland, in pro. per., and Harold J. Ackerman, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and A. Douglas MacRae, Deputy Attorney General, for Plaintiff and Respondent.

GIBSON, C. J.—A jury found defendant guilty on two counts of unlawfully taking an automobile (Veh. Code, § 10851), five counts of burglary of the second degree (Pen. Code, §§ 459, 460), and one count of grand theft (Pen. Code, § 487, subd. 1). The sentences imposed by the court for the taking of automobiles were made concurrent with each other but consecutive with respect to concurrent sentences imposed on the burglary counts. The sentence for grand theft was made consecutive with respect to the other sentences. Defendant has appealed, contending, among other things, that the evidence is insufficient to support his convictions and that the court erred in instructing the jury.

In regard to one of the counts of unlawfully taking an automobile, it was shown that on September 11, 1960, an automobile owned by Frank Nunley was stolen and was later found by the police, abandoned and in a "stripped" condition, with its convertible top and other accessories missing, as well as personal belongings that had been inside. On September 30, Nunley saw a Nash automobile equipped with a top which he recognized as being the one missing from his car, and he gave the license number to the police, who determined that the Nash was registered in the name of defendant's wife. When defendant and his wife were questioned on October 5, defendant at first denied having ever owned the Nash but later stated that he had owned it and had sold it, describing the place where the purchaser lived. The police and Nunley went to that location and found the Nash, which was equipped with a convertible top and various other accessories identified by Nunley as the ones taken from his car. The owner of the Nash told the police that it was equipped in this way when he purchased it from defendant on September 19. The officers went with Nunley to defendant's residence, placed him under arrest, and, with his consent, searched the garage, which had been locked. They found an automobile seat cover with Nunley's name on it, as well as eyeglasses and tools which Nunley identified as being his.

The search of defendant's garage disclosed a considerable quantity of equipment and personal property, and some of the items, which the police had reason to believe were recently stolen, were seized by them. After going to headquarters they ascertained that other items seen in the garage answered the description of stolen property, and they returned with a search warrant and took them as well.

Among the things found were the engine and the rear axle

assembly of a Jaguar automobile (involved in the second count of unlawfully taking an automobile). The engine was the one from a 1950 Jaguar automobile which had been stolen on September 17, 1960, and the axle assembly was of a type used in Jaguar models from 1950 through 1952.

The seized property included the following items involved in three of the burglary counts: (1) An adding machine and a Smith-Corona portable typewriter stolen in a burglary on August 9, 1960; (2) a toolbox and tools stolen in a burglary on August 23, 1960; (3) a tape recorder and tapes stolen in a burglary on September 29, 1960.

Another item found in defendant's garage was an air compressor stolen late in August 1960 from inside a hospital under construction. The taking of the compressor, which was worth six or seven hundred dollars, formed the basis of the grand theft count as well as one of the burglary counts.

There was also evidence (forming the basis of another of the burglary counts) that on the night of September 29, 1960, a putty knife and about five dollars were stolen from a commercial garage, that the office in the garage had been entered through a hole cut in the wall, and that, although the stolen property was not found in defendant's possession, the inside surface of a piece of the plasterboard cut out of the wall had a fingerprint on it which an expert identified as defendant's.

The police questioned defendant about the property involved in the various counts, telling him it was stolen. He said that he did not want to discuss the situation, that he was in "enough trouble already," and that the police could not help him. When the police suggested that a woman may have been with defendant when Nunley's car was stolen and that someone must have helped him in that theft, he replied, "You know my wife wasn't with me . . . . I can show you how one man could do it." In response to a question about the Jaguar engine, defendant said he had gotten it in a junkyard, but he could not or would not name the yard. With respect to the adding machine, typewriter and tape recorder, defendant said he bought them but could not remember where, when, or from whom, or how much he paid. Defendant's wife told the officers he had brought the adding machine home in the middle of the night. The police suggested to defendant that someone must have helped him take the air compressor because it was so heavy, and he replied, "Well, I took it out in three pieces." As far as appears, he offered no explanation

to the police regarding his possession of the stolen toolbox and tools.

Defendant did not take the stand at the trial, and he did not introduce any evidence as to how the stolen property was acquired or why his fingerprint was found at the scene of one of the burglaries.

Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. (E.g., *People* v. *Citrino,* 46 Cal.2d 284, 288-289 [294 P.2d 32]; *People* v. *Thompson,* 120 Cal.App.2d 359 [260 P.2d 1019]; *People* v. *Morris,* 124 Cal.App. 402, 404 [12 P.2d 679].) This court stated in *People* v. *Lyons,* 50 Cal.2d 245, 258 [324 P.2d 556], "[P]ossession of stolen property, accompanied by no explanation, or an unsatisfactory explanation of the possession, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. The rule is generally applied where the accused is found in possession of the articles soon after they were stolen." (See also *People* v. *Reynolds,* 149 Cal.App.2d 290, 294 [308 P.2d 48]; *People* v. *Lopez,* 126 Cal. App.2d 274, 278 [271 P.2d 874].) In *People* v. *Citrino, supra,* 46 Cal.2d 284, 288-289, after pointing out that corroboration need only be slight and may be furnished by conduct of the defendant tending to show his guilt, we said, ". . . and the failure to show that possession was honestly obtained is itself a strong circumstance tending to show the possessor's guilt of the burglary." Substantially the same statement is made in a number of other cases, including *People* v. *Russell,* 34 Cal.App.2d 665, 669 [94 P.2d 400] [burglary], *People* v. *Golembiewski,* 25 Cal.App.2d 115, 117 [76 P.2d 717] [burglary], *People* v. *Taylor,* 4 Cal. App.2d 214, 217 [40 P.2d 870] [burglary], and *People* v. *Morris,* 124 Cal.App.2d 402, 404 [12 P.2d 679] [burglary].

It has frequently been held that possession of recently stolen property together with a *false explanation* will support a conviction. (E.g., *People* v. *Ransome,* 180 Cal.App.2d 140, 146-148 [4 Cal.Rptr. 347] [theft]; *People* v. *Russell,* 120 Cal. App. 622, 625-626 [8 P.2d 209] [burglary]; *People* v. *Scott,* 66 Cal.App. 200, 203 [225 P. 767] [theft].) A defendant's *silence* upon arrest was relied on as corroborative evidence in *People* v. *Wells,* 187 Cal.App.2d 324, 331-332 [9 Cal.Rptr. 384] [burglary], where it was said: "The jurors would naturally and reasonably conclude that if he [the defendant] had purchased

the property or acquired possession of it honestly he would be swift to declare and explain the circumstances that vindicated his conduct. . . . His silence, when it would have been so easy for him to speak if innocent, is quite persuasive and convincing.'' (See also *People* v. *Miller,* 45 Cal.App. 494, 496 [188 P. 52] [theft].)

The great weight of authority in other jurisdictions recognizes that an inference of guilt is permissible where recently stolen property is found in the conscious possession of a defendant and the possession is not explained. (See 101 Am.St. Rep. 481-524; Wigmore on Evidence (3d ed. 1940) vol. 1, §§ 152, 153, pp. 598-600; *id.,* vol. 6, § 1781, pp. 226, 228; *id.,* vol. 9, § 2513, pp. 417-423; 3 Underhill's Criminal Evidence (5th ed. 1957) §§ 600, 601, 602, pp. 1460-1471; *id.,* § 723, pp. 1683-1687; 56 A.L.R.2d 1360-1365; 12 C.J.S. 717, 736-737; 52 C.J.S. 924 et seq.)

The rule may be stated as follows: Where recently stolen property is found in the conscious possession of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession or remains silent under circumstances indicating a consciousness of guilt, an inference of guilt is permissible and it is for the jury to determine whether or not the inference should be drawn in the light of all the evidence. As shown by the California cases cited above, this rule is applicable whether the crime charged is theft, burglary, or knowingly receiving stolen property. (See also 9 Wigmore on Evidence (3d ed. 1940) § 2513, pp. 422-423.)

The many decisions which set forth the rule permitting an inference of guilt, including United States Supreme Court cases (*Wilson* v. *United States,* 162 U.S. 613, 619-620 [16 S.Ct. 895, 40 L.Ed. 1090] ; see *McNamara* v. *Henkel,* 226 U.S. 520, 524-525 [33 S.Ct. 146, 57 L.Ed. 330] ; *Dunlop* v. *United States,* 165 U.S. 486, 502 [17 S.Ct. 375, 41 L.Ed. 799] ), are implied authority for its constitutionality. (For an express holding of constitutionality see *People* v. *Kulig,* 373 Ill. 102 [25 N.E.2d 73, 74] ; cf. *State* v. *Todaro,* 131 N.J.L. 430 [37 A.2d 73, 74], upholding a statute providing for a similar rule [app. dism. 323 U.S. 667 [65 S.Ct. 73, 89 L.Ed. 542], citing the *Wilson* case, *supra,* and *Tot* v. *United States,* 319 U.S. 463 [63 S.Ct. 1241, 87 L.Ed. 1519]].) To say that an inference is permissible under certain circumstances is, of course, to say that those circumstances afford a rational basis for the inference, and inferring one fact from another is consistent with

due process if there is a rational connection between the two, (Cf. *Tot* v. *United States*, 319 U.S. 463, 467 [63 S.Ct. 1241, 87 L.Ed. 1519].)

The view that a person's silence when questioned by the police concerning his possession of recently stolen property may be used against him as indicating a consciousness of guilt or as an admission is in accord with analogous cases involving silence in the face of accusatory statements made by the police. (See *People* v. *Abbott*, 47 Cal.2d 362, 373 [303 P.2d 730]; *People* v. *Simmons*, 28 Cal.2d 699, 711 et seq. [172 P.2d 18].)

Of course, as is true with respect to accusatory statements, admissibility of evidence regarding such silence requires a showing that the circumstances under which the defendant is confronted by the police with the fact of possession were such as to reasonably call for a denial or an explanation. The accused must understand that he is being charged with the commission of a crime as the result of his possession of the stolen property, and he must have a reasonable opportunity to give an explanation. His silence cannot be used against him if it is based on a claim of right to which he is legally entitled.

Obviously, application of the rule permitting an inference of guilt in the situation involving pretrial silence upon questioning by the police does not mean that a defendant may be convicted on evidence of possession alone. In such a situation there is not only the incriminating fact of possession of recently stolen property but, in addition, an affirmative showing of consciousness of guilt arising from a different fact, the silence of the accused under circumstances in which an innocent man would ordinarily have spoken out.

It should also be emphasized that the rule in no way shifts the burden of proof or destroys the presumption of innocence; the prosecution must still satisfy the jury of a defendant's guilt beyond a reasonable doubt. The rule does not require conviction but merely permits an inference of guilt if the jury determines one is warranted in the light of all the circumstances, and even though a defendant remains silent throughout and introduces no evidence whatever, he may nevertheless be acquitted. His silence when questioned by the police should not be used against him if it appears that he is acting on the basis of his right not to incriminate himself, and, even where his failure to explain is not based on a matter of right, he will be free later to introduce evidence of reasons for his silence other than conscious-

ness of guilt, such as the desire to protect someone else. If he chooses not to be silent and makes a statement by way of explanation which on its face raises a reasonable doubt as to guilt (for example, that he was not aware that the property was on his premises), the burden with respect to the truth or falsity of his statement is not on him but on the prosecution, so that it cannot be treated as untrue unless the prosecution establishes falsity, as by showing that it is not believable in the light of the circumstances surrounding his possession.

.Application of the rule in the situation involving silence upon questioning by the police is entirely consistent with decisions which, in construing section 13 of article I of the Constitution,[1] have recognized that a defendant's failure to testify in explanation of evidence introduced against him may be considered by the jury as tending to indicate the truth of such evidence and the inference to be drawn from it but cannot be used to fill a gap in the prosecution's case. (See *People* v. *Ashley,* 42 Cal.2d 246, 268-269 [267 P.2d 271]; *People* v. *Adamson,* 27 Cal.2d 478, 489-490, 492 [165 P.2d 3]; *People* v. *Albertson,* 23 Cal.2d 550, 584 et seq. [145 P.2d 7] [concurring opinion]; *People* v. *Talle,* 111 Cal.App.2d 650, 663-664 [245 P.2d 633]; *People* v. *Cox,* 102 Cal.App.2d 285, 287 [227 P.2d 290]; *People* v. *Garrison,* 80 Cal.App.2d 458, 462 [181 P.2d 738]; *People* v. *Sawaya,* 46 Cal.App.2d 466, 469-471 [115 P.2d 1001].) Some of these cases have held that a failure to testify cannot be used to supply the required corroboration of an accomplice's testimony. However, pretrial silence upon questioning by the police does not stand on the same footing as the failure to testify. As we have seen, where such silence was not based on a claim of right and the other requisites were present, evidence of the silence may be introduced against a defendant to show consciousness of guilt or an admission. Accordingly, it has been held that such silence can serve as corroboration of an accomplice's testimony. (*People* v. *Watkins,* 126 Cal.App.2d 199, 207 [271 P.2d 641]; *People* v. *Hambright,* 113 Cal.App.2d 40, 42 [247 P.2d 607]; *People* v. *Willmurth,* 77 Cal.App.2d 605, 611-616 [176 P.2d 102]; *People* v. *King,* 40 Cal.App.2d 137, 140-141 [104 P.2d 521];

[1]Section 13 of Article I of the Constitution provides that in a criminal case no person shall be compelled to be a witness against himself and that in such a case the defendant's failure to explain or to deny ''by his testimony'' any evidence or facts in the case against himself may be commented upon by the court and by counsel and may be considered by the court or the jury.

*People* v. *Collins,* 4 Cal.App.2d 86, 87-88 [40 P.2d 542] ; see *People* v. *Coakley,* 108 Cal.App.2d 223, 228 [238 P.2d 633].)

The following cases are disapproved insofar as they may be inconsistent with the views expressed above : *People* v. *Luchetti,* 119 Cal. 501, 506-507 [51 P. 707] ; *People* v. *Abbott,* 101 Cal. 645, 647 [36 P. 129] ; *People* v. *Etting,* 99 Cal. 577, 578 [34 P. 237] ; *People* v. *Velarde,* 59 Cal. 457, 463-464; *People* v. *Ah Ki,* 20 Cal. 177, 179-180; *People* v. *Chambers,* 18 Cal. 382, 383-384; *People* v. *Johnson,* 85 Cal.App.2d 240, 244-245 [192 P.2d 483] ; and *People* v. *Haack,* 86 Cal.App. 390, 395-400 [260 P. 913].

The evidence in the present case is sufficient to support defendant's convictions. The only count as to which his possession of stolen property was not shown is the one based on the burglary of the garage, and the incriminating evidence on that count consisted of the discovery of his fingerprint on the inside surface of plasterboard cut out of the wall by the burglar. His possession (which could obviously have been found to be conscious possession) of the stolen property involved in the other counts was shown to have taken place within a few days of one of the crimes and within less than two months of all of them, and the character of most, if not all, of the items was such that he could reasonably be expected to remember how he had acquired them so recently. Yet, when questioned by the police, he either attempted explanations which the jury was entitled to reject as false in view of their vagueness and lack of important details, made statements which could be found to constitute admissions, or remained silent under circumstances of the type which could be found to permit use of his silence as reflecting consciousness of guilt. Moreover, his initial denial of ownership of the Nash equipped with parts from Nunley's car was incriminating, as was the evidence that he carried the stolen adding machine home in the middle of the night.

The jury was instructed : "The mere possession of stolen property, however soon after the taking, unexplained by the person having possession, is not sufficient to justify conviction. It is, however, a circumstance to be considered in connection with other evidence in determining the question of innocence or guilt. If you should find from the evidence that a burglary was committed on the premises involved in this case or that a theft occurred and that thereafter the defendant was found in possession, or claimed to be the owner, of property stolen from the burglarized premises, or in the theft, such a fact

would be a circumstance tending in some degree to show guilt, although not sufficient, standing alone and unsupported by other evidence, to warrant your finding him guilty. In addition to proof of possession of such property there must be proof of corroborating circumstances tending of themselves to establish guilt. Such corroborating circumstances may consist of the acts, conduct, falsehoods, if any, or other declarations, if any, of the defendant, and any other proved circumstance tending to show the guilt of the accused. The corroboration of the possession of stolen property need only be slight in order to sustain a conviction. One who is found in the possession of property that was stolen from burglarized premises is bound to explain such possession in order to remove the effect of that fact as a circumstance, to be considered with all other evidence, pointing to his guilt; and if he gives a false account of how he acquired that possession or, having reasonable opportunity to show that his possession was honestly acquired, he refuses or fails to do so, such conduct is a circumstance that tends to show his guilt.''[2]

 Insofar as the instruction was to the effect that unexplained possession of recently stolen property cannot, without more, warrant conviction, defendant, of course, is not in a position to complain since such an understanding of the law would have been favorable to him. If it be assumed that any part of the instruction might have been construed to mean that such possession could permit an inference of guilt, this, as we have seen, was a correct statement of the law applicable where, as here, in addition to a showing of possession of recently stolen property, it appears that the accused, upon questioning by the police, remained silent under circumstances justifying the conclusion that his silence indicated consciousness of guilt. There can be no question that the instruction complained of was correct to the extent that it dealt with the incriminating effect of false explanations and statements constituting admissions, and such conduct on the part of defendant was shown to be present as to every count relating to possession except the one concerning the recently stolen toolbox, which defendant had in his possession at the same time and place as the recently stolen property involved in the other

---

[2]The instruction given to the jury used, with some modifications, the language of former instructions on the same subject in California Jury Instructions, Criminal (rev. ed. 1958), numbers 203 and 235. These instructions were revised in 1962 to omit the thought that unexplained possession however soon after the crime is not sufficient to warrant conviction.

counts. In the light of the entire record, the instruction, although not worded as clearly as would have been desirable with respect to consideration of defendant's silence upon questioning by the police, cannot be said to have resulted in a miscarriage of justice. (Cal. Const., art. VI, § 4½.)

It was error to impose sentences for both burglary and grand theft upon defendant with respect to the taking of the air compressor from inside a hospital. Section 654 of the Penal Code provides in part, "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

The principles governing the application of section 654 were clarified by this court in *Neal* v. *State of California,* 55 Cal.2d 11, 18 et seq. [9 Cal.Rptr. 607, 357 P.2d 839]. It was there pointed out, upon an analysis of several earlier decisions, that the prohibition of the statute against double punishment applies not only where "one 'act' in the ordinary sense" is involved but also where there is a "course of conduct" which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654; that the divisibility of a course of conduct depends upon the intent and objective of the defendant; and that if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one. (See also *Seiterle* v. *Superior Court,* 57 Cal.2d 397, 400 [20 Cal.Rptr. 1, 369 P.2d 697].) It was held in *Neal* that, where arson is the means of attempting murder and is merely incidental to the primary objective of committing murder, the defendant cannot be punished for both arson and attempted murder.

Even in the absence of a statute such as section 654 recent decisions of the United States Supreme Court, upon reasoning which, as in *Neal,* emphasized the intent of the defendant, have held that the Federal Bank Robbery Act should be construed as not permitting sentences for both entering with intent to steal and robbery or for both robbery and receiving stolen money. (*Prince* v. *United States,* 352 U.S. 322, 324 et seq. [77 S.Ct. 403, 1 L.Ed.2d 370, 59 A.L.R.2d 940]; *Heflin* v. *United States,* 358 U.S. 415, 419-420 [79 S.Ct. 451, 3 L.Ed.2d 407]; cf. *Milanovich* v. *United States,* 365 U.S. 551, 553 et seq. [81 S.Ct. 728, 5 L.Ed.2d 773] [stealing from Naval com-

missary store and subsequently receiving stolen currency];
*United States* v. *Universal C.I.T. Credit Corp.,* 344 U.S. 218,
220 et seq. [73 S.Ct. 227, 97 L.Ed. 260] [successive violations
of Fair Labor Standards Act treated as ''a single course of
conduct'' subject to only one criminal penalty].) These cases
are in accord with other recent United States Supreme Court
decisions pointing out that, where statutes create more than
one crime but are unclear on the question of multiple punish-
ment, ''the Court applies a policy of lenity and adopts the
less harsh meaning.'' (*Ladner* v. *United States,* 358 U.S. 169,
177 et seq. [79 S.Ct. 209, 3 L.Ed.2d 199] ; *Bell* v. *United States,*
349 U.S. 81, 83-84 [75 S.Ct. 620, 99 L.Ed. 905].) It is true
that the older case of *Morgan* v. *Devine* (1915) 237 U.S. 632
[35 S.Ct. 712, 59 L.Ed. 1153], in the absence of a statute like
section 654, rejected the concept of a continuing single intent
with respect to federal statutes relating to theft of postal
funds, but in view of the decisions of the United States Su-
preme Court discussed above, we should not treat either the
*Morgan* case or the lower federal decisions which follow it as
furnishing an indication of what result would be reached by
that court under a statute like section 654.

On the basis of other out-of-state decisions which have been
called to our attention it cannot properly be said that there
is a majority rule or a trend of decision with respect to how
a statute such as section 654 should be applied. Except for
decisions from New York, Arizona, and Utah, none has in-
volved such a statute. The lower court cases in New York seem
to be in conflict (compare *People* v. *Savarese* (1952) 1 Misc.
2d 305 [114 N.Y.S.2d 816, 835-836], with *People* v. *Zipkin*
(1952) 202 Misc. 552 [118 N.Y.S.2d 697, 698-699]), and what
appears to be the leading case in that state, *People* ex rel.
*Maurer* v. *Jackson,* 2 N.Y.2d 259 [159 N.Y.S.2d 203, 140
N.E.2d 282], is consistent with the California rule. The New
York court was careful to stress that the ''single issue'' before
it was whether the statute against double punishment was vio-
lated by the imposition of ''*concurrent* sentences'' (italics in
the original), and the decision rests largely on the ground
that concurrent sentences can never constitute double punish-
ment. (140 N.E.2d at pp. 284, 286 et seq.) Moreover, there is
considerable language in the opinion indicating that whether
two crimes are committed with the same or different *intent* is of
great importance. (140 N.E.2d at pp. 285-286.) The Arizona
court, in *State* v. *Hutton,* 87 Ariz. 176 [349 P.2d 187, 188-
189], although reasoning that consecutive sentences for bur-

glary and theft could be imposed under the statute, held that only *concurrent* sentences should be imposed in the interests of justice. The Utah case of *State* v. *Jones,* 13 Utah 2d 35 [368 P.2d 262], which considered a statute like section 654, based its conclusion in part on the authority of a prior Utah decision, *Rogerson* v. *Harris,* 111 Utah 330 [178 P.2d 397, 399], without recognizing that the earlier decision had involved a statute which was quite different from the one before us.

The evidence, as we have seen, is sufficient to support convictions both of burglary and of grand theft with respect to the taking of the air compressor from the hospital. The inference which the jury was permitted to draw in that regard was that defendant entered the hospital with intent to steal and that the taking of the air compressor was the culmination of that intent. The record contains nothing indicating that he entered the hospital with intent to commit some crime other than theft. In these circumstances the only reasonable conclusion is that the entry of the hospital and the taking of the air compressor were parts of a continuous course of conduct and were motivated by one objective, theft; the burglary, although complete before the theft was committed, was incident to and a means of perpetrating the theft.

Thus defendant can be punished for either offense but not for both, and decisions of the District Courts of Appeal subsequent to *Neal* have held that double punishment is improper in a situation such as the one before us. (*People* v. *Brown,* 200 Cal.App.2d 111, 118 [19 Cal.Rptr. 36] ; *People* v. *Dykes,* 198 Cal.App.2d 75, 81 [17 Cal.Rptr. 564] ; *In re Dowding,* 188 Cal.App.2d 418, 421-424 [10 Cal.Rptr. 392].) The following cases, which are to the contrary, antedate and are inconsistent with our decision in *Neal* and are disapproved : *People* v. *Macias,* 161 Cal.App.2d 594 [326 P.2d 936], *People* v. *Guarino,* 132 Cal.App.2d 554 [282 P.2d 538], *People* v. *White,* 115 Cal.App.2d 828 [253 P.2d 108], *People* v. *Finkel,* 94 Cal. App.2d 813 [211 P.2d 888], *People* v. *Brain,* 75 Cal.App. 109 [241 P. 913], *People* v. *Snyder,* 74 Cal.App. 138 [239 P. 705], and *People* v. *Sharp,* 58 Cal.App. 637 [209 P. 266].

With respect to the procedure to be followed on appeal where double punishment has been erroneously imposed, it should be stressed that section 654 proscribes double punishment, not double conviction ; conduct giving rise to more than one offense within the meaning of the statute may result in initial conviction of both crimes, only one of which, the more serious offense, may be punished. (*People* v. *Chessman,* 52 Cal.

2d 467, 497 [341 P.2d 679].) The appropriate procedure, therefore, is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned. (See *People* v. *Brown*, 200 Cal.App.2d 111, 118 [19 Cal.Rptr. 36].) It is true that there are cases which have, without qualification, reversed the "judgment of conviction" as to the lesser count, thus apparently eliminating the effect of the judgment with respect to conviction as well as punishment. (See e.g., *People* v. *Brown*, 49 Cal.2d 577, 593-594 [320 P.2d 5]; *People* v. *Logan*, 41 Cal.2d 279, 291 [260 P.2d 20].) These cases, however, did not discuss whether the terms of section 654 are to be construed as requiring the setting aside of both conviction and punishment. ▮▮▮ The court in some of them, for example, *People* v. *Brown*, *supra*, 49 Cal.2d 577, 593, was concerned with the danger that the Adult Authority would consider the conviction of the lesser offense in fixing the punishment on the more serious crime. Such action by the Adult Authority would, of course, be improper, and nothing we have said as to the procedure to be followed should be interpreted as permitting it.

Of the two offenses involved here, second degree burglary is the one subject to the greater punishment. (Pen. Code, §§ 461, 489.) Accordingly, it is necessary to reverse the judgment insofar as it relates to punishment for grand theft.

Defendant's assertion that several matters other than those discussed above require a reversal of the judgment as a whole is devoid of merit and need not be discussed.

The judgment is reversed insofar as it imposes a sentence for grand theft, and in all other respects it is affirmed.

Traynor, J., Tobriner, J., and White, J.,* concurred.

SCHAUER, J., Concurring and Dissenting.—I concur in the majority's formulation of the rule that "Where recently stolen property is found in the conscious possession of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession or remains silent under circumstances indicating a consciousness of guilt, an inference of guilt is permissible and it is for the jury to determine whether or not the inference should be drawn in the light of all the evidence." (*Ante*, p. 755.) I must dissent,

---

*Assigned by Chairman of Judicial Council.

however, (1) from the holding that Penal Code section 654[1] precludes sentencing defendant on each of the valid judgments of conviction rendered on Count V (burglary) and Count VI (grand theft) ; and (2) from all that portion of the majority's discussion which today appears to return applicability of the subject statute to a nebulous confusion which I thought had been finally eliminated when, less than one year ago, we filed *People* v. *Tideman* (April 27, 1962) 57 Cal.2d 574, 584-588 [13a, 14, 15, 13b, 16, 17, 13c, 6b] [21 Cal.Rptr. 207, 370 P.2d 1007].

The majority apparently feel compelled to reach this holding by the assertion in *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [22] [9 Cal.Rptr. 607, 357 P.2d 839], that "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on *the intent and objective* of the actor. If all of the offenses were *incident to one objective,* the defendant may be punished for any one of such offenses but not for more than one." (Italics added.) The majority paraphrase this language, characterizing it as one of the "principles" governing the application of section 654 that were "clarified by" the *Neal* opinion. (*Ante,* p. 760.)

This summary and uncritical disposition of the matter calls to mind the oft-quoted warning of a great jurist: "It is one of the misfortunes of the law that ideas become encysted in phrases and thereafter for a long time cease to provoke further analysis." (Holmes, J., dissenting in *Hyde* v. *United States* (1912) 225 U.S. 347, 384, 391 [32 S.Ct. 793, 56 L.Ed. 1114, 1132].) On two previous occasions I have attempted to analyze the meaning—or lack of it—of the so-called "intent and objective test" for applying Penal Code section 654, and to show that continued adherence to such a formula can only lead to absurdity. (See my dissenting opinion in *Neal* v. *State of California* (1960), *supra,* 55 Cal.2d 21; and my concurring and dissenting opinion in *Seiterle* v. *Superior Court* (1962) 57 Cal.2d 397, 403 [20 Cal.Rptr. 1, 4, 369 P.2d 697, 700].) I do not propose to repeat what I said in those opinions; but a further analysis is imperative when the majority of this court persist in invoking the so-called "intent and objective test"

---

[1] Penal Code section 654 provides in part:

"An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. . . ."

to reach a result which not only does violence to Penal Code section 654 but is wholly and irreconcilably out of step with contemporary American judicial thought.

It is not too late for such a reappraisal. A careful reading of the majority opinion in *Neal* discloses that the above quoted language purporting to adopt the so-called "intent and objective test" was not necessary to the decision in that case. As the majority there viewed the record, the defendant had committed but a single *act*: his convictions for arson and attempted murder were said to rest "upon defendant's act of throwing gasoline into the bedroom of Mr. and Mrs. Raymond and igniting it." (*Id.* at p. 18 [14] of 55 Cal.2d.) Yet such a case presents no problem in applying Penal Code section 654, for under the terms of that statute a single act may be punished only once. The *Neal* majority expressly recognize this rule (*id.* at p. 19 [19]), quoting from *People* v. *Knowles* (1950) 35 Cal. 2d 175, 187 [14] [217 P.2d 1] : "If only a single act is charged as the basis of the multiple convictions, only one conviction can be affirmed, notwithstanding that the offenses are not necessarily included offenses." As Justice (now Circuit Judge) Duniway, speaking for a unanimous court, observed shortly after *Neal* was handed down, "We think that the case could have rested upon that ground alone." (*People* v. *Fields* (1961) 190 Cal.App.2d 515, 517 [1] [12 Cal.Rptr. 249].) Under the majority's view of the facts in *Neal,* section 654 by its clear language was applicable and in that aspect the case was controlled by ample precedent. There was therefore no need to go on to discuss what rule might be invoked in an entirely different class of cases, i.e., those involving *not a single* act—the only situation embraced by the language of the code section—but a "course of criminal conduct" encompassing *multiple* acts; such acts being connected *not* in a single crime but only in the multifarious plan of the criminal for the commission of divers crimes requiring separate acts (see e.g., *In re Chapman* (1954) 43 Cal.2d 385, 389 [3] - 390 [6] [273 P.2d 817] ; *People* v. *Slobodion* (1948) 31 Cal.2d 555, 561-563 [6] [191 P.2d 1]). It is elementary that a case is authority for only those propositions of law which are necessary to the decision.[2]

---

[2]Penal Code section 654 has been discussed in four decisions of this court since *Neal.* In one of these (*Seiterle* v. *Superior Court* (1962), *supra,* 57 Cal.2d 397) the judgment denying prohibition was required on at least three grounds—each independently sufficient—other than the asserted inapplicability of section 654 (see my concurring and dissenting opinion, *id.* at pp. 404-406) ; and in the remaining three decisions (*People*

At the outset I address one question to the majority, which should have a direct answer: Does the conviction and punishment, or trial and acquittal, of a defendant for second degree burglary, under circumstances identical with those here extant, through operation of Penal Code section 654 bar subsequent prosecution, conviction and punishment of that defendant for murder when it is discovered that murder was committed by him, and that the homicide as well as grand theft was included in his "intent and objective" when he made the burglarious entry? (Concealment of the homicide until after sentence or acquittal for the lesser offense was of course included in the "intent and objective.")

If we respect logic the answer necessarily implied by the majority's holding is affirmative. The portion of section 654 relied on by the majority reads "An act . . . made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ." The section further provides that "an *acquittal* or conviction and sentence under either one [of the applicable sections] *bars a prosecution for the same act . . . under any other.*" (Italics added.) Manifestly an *acquittal* is the full equivalent of *conviction and sentence* as a bar to further prosecution. Since the majority hold that the burglary and grand theft of which defendant has been convicted constitute but *one act within the operation of section 654* it indubitably follows that if the defendant had first been accused, and separately tried for and *acquitted,* of burglary he could not thereafter be prosecuted for the grand theft (however conclusive the proof) for "an acquittal . . . under either one [of the applicable sections] bars a prosecution for the same act . . . under any other." The language and applicability of the section are equally clear in both cases. It is also equally clear, therefore, that if punishment of the defendant for grand theft is precluded if he is punished for burglary then prosecution for murder is barred if previously he has been convicted and punished for, or acquitted of, either the burglary or the grand theft.

v. *Monk* (1961) 56 Cal.2d 288, 300 [15] [14 Cal.Rptr. 633, 363 P.2d 865]; *People* v. *Carter* (1961) 56 Cal.2d 549, 565 [11] [15 Cal.Rptr. 645, 364 P.2d 477]; *People* v. *Tideman* (1962), *supra,* 57 Cal.2d 574, 584 [13a]), all unanimous, the so-called "intent and objective test" was not even mentioned. There is nothing whatsoever in any of these decisions which supports today's majority holding, and to the contrary the majority's extension of section 654 is manifestly inconsistent with the carefully researched and detailed holdings in *Tideman* (1962), *supra,* 57 Cal.2d 574, 584-588 [13a, 14, 15, 13b, 16, 17, 13c, 6b].

Responsibility for this grotesque result rests on the *Neal* dictum and today's application of that dictum, not on the act of the Legislature. Section 654 unmistakably speaks in the singular of "An act or omission which is made punishable in different ways by different provisions" of the Penal Code. It does not speak in the plural of acts or omissions which independently constitute different crimes and which *as such are* made punishable in different ways by different provisions of the code. The real vice of the majority holding lies in confusing the word "act" (or "omission") with "the intent and objective of the actor." Elaborating such confusion the majority in effect add to section 654 a provision so that as applied here it reads, "An act ... made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; *furthermore, if any such act ... is one of a series of acts constituting separate crimes punishable in different ways by different provisions of this code, but all of which acts are a part of 'a course of criminal conduct' included in 'the intent and objective of the actor'* the defendant may be punished for any one of such offenses but not for more than one." (Italics added.) The inevitable effect of this gratuitous ruling will be to create a bargain era for criminals: any number of crimes can be committed for the price of one, provided only that all be included in "the intent and objective of the actor."

The so-called "intent and objective test" compounds any inherent difficulties of the situation by grievously misdirecting the trial court's attention. By its terms section 654 (*ante,* fn. 1) prohibits double punishment for the same "act or omission," rather than for a series of separate and distinct acts assertedly inspired by one "objective." It is true that we have taken the word "act" as used in section 654 to mean something more than simply each physical movement of the criminal, and have recognized that it may in legal contemplation also refer to instances "where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." (*People* v. *Brown* (1958) 49 Cal.2d 577, 591 [13] [320 P.2d 5].) The solution to the latter problem, however, is to be found not in the facile invocation of an all-embracing formula, but in a close analysis of the *acts* involved in the particular case. "Where the question is whether a transaction is divisible or indivisible, each case must be resolved on its facts." (*People* v. *Brown*

(1958), *supra.*) The factual determination to be made by the trial court is, in obedience to the terms of the statute, "whether a separate and distinct act can be established as the basis of each conviction, or whether a single act has been so committed that more than one statute has been violated." (*People* v. *Knowles* (1950), *supra,* 35 Cal.2d 175, 187 [14].) Further sharpening the latter distinction, we explained in *In re Chapman* (1954), *supra,* 43 Cal.2d 385, 390 [7], that "It is only when the two offenses are committed by the same act *or when that act is essential to both* that they may not both be punished." (Italics added.) An identical rule has been adopted by the highest courts of New York in applying their counterpart to our Penal Code section 654: in the leading case of *People* ex rel. *Maurer* v. *Jackson* (1957) 2 N.Y.2d 259, 264 [159 N.Y.S.2d 203, 206 [2, 3] 140 N.E.2d 282], the Court of Appeals declared (citing our decision in *In re Chapman* (1954), *supra*) that double punishment would be prohibited "if there were an act which itself violated one statute and was *a material element* of the violation of another" (italics added); and in *People* v. *Oliver* (1957) 4 App.Div.2d 28 [163 N.Y.S.2d 235, 241 [10]], affd. (1958) 3 N.Y.2d 684 [171 N.Y.S.2d 811, 148 N.E.2d 874]], the court expressed the view that only one punishment could be imposed where an act of assault "was *an essential ingredient* of the crime of burglary" as pleaded and proved in that case. (Italics added.)

These are not infallible criteria—it is self-delusion to believe that such criteria may exist in the law—but broad guidelines which have on the whole been observed with good sense and results fair to all parties. In attempting to apply the so-called "intent and objective test," however, the attention of the trial court is in each instance distracted from the factual analysis necessary to achieve the purpose of section 654, and instead becomes enmeshed in a *post hoc* speculation as to the scope of the criminal's "objective." But in many cases the latter will have been ill-defined even in the criminal's own mind, especially with regard to such matters as sudden interruptions by third parties and alternative means of perpetration, escape, or concealment.

The application of the so-called "intent and objective test" is apparently a game that any number can play. Prior to *Neal* there were, it is true, cases in which this court reviewed the record on the question of double punishment and concluded, contrary to the implied determination of the trial court, that the evidence showed only a single punishable act or an indivis-

ible transaction. (See e.g., *People* v. *Brown* (1958), *supra,* 49 Cal.2d 577, 590-591 [13] ; *People* v. *Logan* (1953) 41 Cal.2d 279, 290 [11] [260 P.2d 20] ; *People* v. *Knowles* (1950), *supra,* 35 Cal.2d 175, 186 [13a] ; *People* v. *Kehoe* (1949) 33 Cal.2d 711, 715 [1] [204 P.2d 321].) Since *Neal,* however, the District Courts of Appeal have multiplied manyfold the instances in which one or more convictions have been set aside on appeal for asserted violation of Penal Code section 654.[3] A study of the opinions discloses that the *Neal* dictum has seemingly been interpreted as license to indulge at the appellate level in unbridled speculation as to the scope and content of the criminal's ''objective.'' No longer is the evidence on the issue of double punishment viewed in the light most favorable to the express or implied finding of the trier of fact. That salutary principle of appellate review has, in many of these cases, given way to flights of conjecture and tenuous distinctions having but a remote connection with the record.

One or two examples will suffice. In the pre-*Neal* case of *People* v. *O'Farrell* (1958) 161 Cal.App.2d 13 [325 P.2d 1002], the defendant and two accomplices, armed with burglar's tools and a pistol, broke into a private club between 3 and 4 a. m. They were interrupted in their endeavors by the presence of a night janitor and by the subsequent arrival, one after another, of four other club employes. Each employe was detained at gunpoint, marched to a restroom, and tied up. The criminals forced open a safe and escaped with its contents and with the wallet of one of the employes. The defendant was convicted of burglary, kidnapping for the purpose of robbery, and armed robbery; the convictions were affirmed on appeal. In rejecting the contention that section 654 prohibited separate punishments for kidnapping and robbery, the reviewing court held that under proper instructions the jury found these crimes to be ''independent'' and that ''there is adequate support for its finding.'' (*Id.* at p. 22 [4b].) In the post-*Neal* case of *People* v. *Velarde* (1962) 201 Cal.App.2d 231, 233 [2] [19 Cal.Rptr. 832], the defendant and an accomplice forced the owners of a store to go at gunpoint into a back room, bound them, and took money from one and from the cash register. Quoting the so-called ''intent and objective test'' from *Neal,*

---

[3]Less than two years have elapsed since *Neal,* yet during that period the issue of double punishment has been raised in at least 18 cases before the District Courts of Appeal, and has resulted in reversal of one or more convictions in 14 of these. Several of the relevant decisions are cited hereinafter and in the majority opinion.

the appellate court held that convictions of robbery and kidnapping for the purpose of robbery constituted double punishment in violation of Penal Code section 654. The court distinguished the *O'Farrell* case on the ground that it "involved a burglarious entrance for the purpose of theft. The *unexpected events* occurring after the entrance resulted in kidnapping and other crimes which *were not a part of the original intent*. Each new and different purpose occurred when the defendants unexpectedly and at separate times discovered five different employees under different circumstances. Each discovery led to separate dealings with each person by defendants and *none of the acts done was a part of the original plan,* each being separate and divisible from the others." (Italics added.) By such untrammelled speculation the *O'Farrell* case was forced into the *Neal* mold. Yet shortly afterwards in *Downs* v. *State of California* (1962) 202 Cal.App.2d 609, 614-615 [10] [20 Cal.Rptr. 922], on facts apparently indistinguishable from *O'Farrell*, it was held that an armed burglar who held up and bound at gunpoint two intruding night janitors could not be convicted of both burglary and robbery. Rejecting a contention that "the trier of facts could well have found that the petitioner's original intent was to enter to commit theft and that the intent to commit robbery originated in his mind after the completion of the first offense," the appellate court reinterpreted the evidence and stated, "Regardless of the wording of the information, petitioner entered the telephone company building with the single purpose to rifle its safe, hoping, no doubt, that this could be accomplished without interference, but *prepared for that event* by carrying a gun *which he intended to and did threateningly use to consummate the crime*. To urge that these gun-toting miscreants had limited their original object to safe-cracking only, *upon the unlikely assumption* that nightly janitorial service was not performed in the telephone company building is unrealistic and unsupported by the record." (Italics added.) Were the gun-toting miscreants in *O'Farrell* any less "prepared"?

Finally, it bears emphasis that similar speculation has been resorted to in an effort to *uphold* multiple convictions in the face of the *Neal* dictum. It is, obviously, a sword that cuts both ways. In *People* v. *Fields* (1961), *supra,* 190 Cal.App.2d 515, the evidence showed that the defendant and an accomplice drove a truck alongside a young girl and forcibly seized her, dragging her into the cab. She was placed between the two men and told that she was "going for a ride." They drove

for 20 or 30 minutes away from the built-up area where the girl was seized, then dragged her from the truck, knocked her down, and raped her in turn. The defendant contended that under such authorities as *People* v. *Wein* (1958) 50 Cal.2d 383, 409-410 [42] [326 P.2d 457], and *People* v. *Chessman* (1951) 38 Cal.2d 166, 193 [33-35] [238 P.2d 1001], he could not be punished more than once for this course of conduct, as the kidnapping was incidental to the rape. The District Court of Appeal, nevertheless, speculated (*id.* at p. 518 [1]) that "we think that the trier of fact *could well have found* that the course of conduct was divisible; that the seizure and asportation of the victim, which lasted for half an hour or more, and was interrupted by a stop to buy some beer, *was not, initially, with an intent* to commit forcible rape, and that *that intent arose in defendant's mind* a considerable time after the kidnapping. *Defendant may well have begun* by hoping that, with the aid of beer, he could persuade the victim to indulge his desires voluntarily. *He may not, at the start, have intended* to have sexual relations with her at all." (Italics added.) On this basis the court affirmed a judgment imposing, *inter alia,* consecutive sentences for kidnapping and rape.

Such legal legerdemain results neither in the fair and impartial administration of criminal justice nor in public respect for the judicial process. Before we finally commit ourselves to the vagaries of application and the arbitrary outcome of the so-called "intent and objective test," we would be well advised to consider the experience of other courts in this matter.

The majority in *Neal* apparently took their formulation of this "test" from a suggestion of a New York inferior court judge in *People* v. *Savarese* (1952) 1 Misc. 2d 305 [114 N.Y.S. 2d 816, 835-836 [15]] (cited in *Neal* at p. 19 [18] of 55 Cal. 2d). That decision, however, has been criticized in the courts of New York (*People* v. *Zipkin* (1952) 202 Misc. 552 [118 N.Y.S.2d 697, 698-699]), and no subsequent decision of the New York Court of Appeals has been found adopting the suggested rule. New York has a statute materially similar to Penal Code section 654 and upon which our provision was originally based (N.Y. Penal Law, § 1938) ; yet the highest court of that state continues to interpret and apply it in the light of the principles summarized in *People* ex rel. *Maurer* v. *Jackson* (1957), *supra,* 2 N.Y.2d 259, 264 [159 N.Y.S.2d 203, 206 [2, 3]] : "It is clear that if separate and distinct acts were committed, and that they violated more than one section of the

Penal Law, punishment for each of them would be proper although they arose out of a single transaction. [Citations.] It is also not open to dispute that if there were merely a *single inseparable act* violative of more than one statute, or if there were an act which itself violated one statute and was a material element of the violation of another, there would have to be single *punishment*." (Italics in original.)

The majority assert, nevertheless, that the *Jackson* case "is consistent with the California [meaning, presumably, the *Neal*] rule." (*Ante*, p. 761.) The contrary appears from the language of the opinion itself. The decision in *Jackson* rested upon alternative grounds: one was the holding that the imposition of concurrent sentences did not constitute double punishment under New York law; the other—distinct from the first and itself independently sufficient—was the holding that the double punishment statute (N.Y. Pen. Law, § 1938) was inapplicable in any event because the defendant's two convictions were based on separate and distinct acts. The latter holding was reached in response to the following issue: "Assuming that the robbery and the assault occurred at about the same time, the *amicus* nevertheless maintains that the separate sentences were proper here, and we give that first consideration." (*Id.* at p. 206 [2, 3] of 159 N.Y.S.2d.) While the majority find language in the opinion "indicating" that "whether two crimes are committed with the same or different *intent* is of great importance" (*ante*, p. 761), the fact remains that the New York court resolved the issue of the applicability of the double punishment statute by directing its attention to the *acts* committed · by the defendant. Thus the court reasoned (*id.* at p. 207 [2, 3]) that "In the case now before us the meager record will not permit us to determine precisely *the acts* of this defendant, e.g., whether or not the attempted robbery was incomplete before he discharged his revolver in his attempt to kill Richter, or how much time if any elapsed between *those separate acts*. Only the indictment* may guide us as to *the acts* constituting the crimes. From the plea of guilt thereto, we know that defendant admitted not only *the act* of attempting to rob Richter and the ˙assault incidental thereto, i.e., with intent to commit that felony, but also *a separate act* of 'aiming and discharging a loaded pistol' at Richter 'with intent to kill' him." (Italics added.) The court concluded (*id.* at p. 208 [2, 3]) that "We recognize that section 1938 is not by its terms limited to included crimes,

---

*Italicized in original.

although it is clear that the statute will there apply; *if, however, the acts are separable, it will not apply.* Here, one single act is *not* the basis of the two charges; they were *separable and distinct* and involved two different kinds of conduct, even though arising out of the same transaction.'' (Italics added.) This is the language that we used in *In re Chapman* (1954), *supra,* 43 Cal.2d 385, 389 [6] - 390 [7], cited and discussed by the New York court (at pp. 206-207 [2, 3] of 159 N.Y.S.2d).

Similarly, in a case where a defendant was convicted and given consecutive sentences on one count of attempted burglary and a second count of possession of burglar's tools, both offenses apparently growing out of the same course of criminal conduct, the trial court denied a writ of error coram nobis sought on the ground that the defendant had been doubly punished for the same act. In the Court of Appeals the defendant argued that ''acquisition or the obtaining of possession of burglar's tools constitutes nothing more than a step or preparation *in furtherance of an intent to commit a burglary* and, . . . the act of possession, occurring simultaneously with the attempt, in accord and *in line with the predominant intent, which is burglary,* may be used as a basis for prosecution and punishment for one or the other, but not for both.'' (Italics added.) This is *Neal* language; in a memorandum opinion, however, the Court of Appeals affirmed the order denying relief. (*People* v. *Cassell* (1959) 6 N.Y.2d 762 [186 N.Y.S.2d 661, 662, 159 N.E.2d 206].) And even after the appearance of *Neal* the courts of New York have continued to direct their attention to *whether a separate and distinct act can be established as the basis of each count of a multiple conviction,* and have refused to invoke the so-called ''intent and objective test'' suggested in *Savarese.* (See e.g., *People* v. *McCall* (1962) 16 App.Div.2d 313 [228 N.Y.S.2d 52, 57 [3]]; *People* v. *La Vallee* (1961) 15 App.Div.2d 611 [222 N.Y.S.2d 462, 464 [1, 2]].) We have in *Neal,* therefore, the curious spectacle of a majority of this court—in a case, it bears remembering, where (on the subject issue) it was not necessary to do more than apply existing law—seizing upon a suggestion of a New York inferior court judge which the highest courts of that same jurisdiction have repeatedly declined to accept.

If the courts of New York (and, as hereinafter will be shown, of other sister jurisdictions as well) have by implication rejected the so-called ''intent and objective test,'' the United States Supreme Court has rejected it expressly. In *Munson* v. *McClaughry* (8 Cir 1912) 198 F. 72 [42 L.R.A. N.S.

302], the defendant had been convicted and given consecutive sentences on one count of breaking and entering a post office building with intent to commit larceny and a second count of larceny committed after such entry; in holding that the defendant could be punished but once for these offenses the Eighth Circuit Court of Appeals reasoned that "A criminal intent to commit larceny of property of the government is an indispensable element of each of the offenses of which the petitioner was convicted, and there can be no doubt that where one attempts to break into or breaks into a post office building with intent to commit larceny therein, and at the same time commits the larceny, his criminal intent is one, and it inspires his entire transaction, which is itself in reality but a single continuing act." (*Id.* at p. 74.) This is *Neal* language; yet shortly thereafter the United States Supreme Court held in an identical case that the imposition of consecutive sentences for such offenses was proper. (*Morgan* v. *Devine* (1915) 237 U.S. 632 [35 S.Ct. 712, 59 L.Ed. 1153].) A district court judgment that relied on *Munson* was reversed, and *Munson* and a similar Ninth Circuit decision were overruled. The high court, in a unanimous opinion prepared by Mr. Justice Day, quoted the language from *Munson* hereinabove set forth, and rejected its reasoning with the observation (*id.* at p. 640) : "But the test is *not* whether the criminal intent is one and the same and inspiring the whole transaction, but *whether separate acts have been committed* with the requisite criminal intent" (italics added).

The majority attempt to overcome the effect of the *Morgan* decision by pointing out that there is no federal statute analogous to our Penal Code section 654. This is obvious, and I do not cite *Morgan* as direct authority but rather for the persuasive effect of the language of a distinguished Justice of our highest court. Yet the majority, on their part, rely on such cases as *Prince* v. *United States* (1957) 352 U.S. 322 [77 S.Ct. 403, 1 L.Ed.2d 370, 59 A.L.R.2d 940], and *Heflin* v. *United States* (1959) 358 U.S. 415 [79 S.Ct. 451, 3 L.Ed.2d 407],[4] and imply that those decisions have somehow weakened

---

[4]Even less relevant than *Prince* and *Heflin* is the second group of cases cited by the majority (*ante,* p. 761), i.e., *Ladner* v. *United States* (1958) 358 U.S. 169 [79 S.Ct. 209, 3 L.Ed.2d 199], and *Bell* v. *United States* (1955) 349 U.S. 81 [75 S.Ct. 620, 99 L.Ed. 905]. The latter deal with the "policy of lenity" approach used by the court when it is unable to determine which of two meanings (concerning punishment) was intended by Congress in enacting a federal criminal statute. (Compare our similar approach in such decisions as *In re Tartar* (1959) 52 Cal.2d

the force of *Morgan* v. *Devine*. This is demonstrably erroneous, as the cases are easily distinguishable. In *Prince*, for example, where the decision turned on the construction of a statute different from that in issue in *Morgan* v. *Devine*, the court carefully limited its holding by stressing that "we are dealing with a unique statute of limited purpose . . . . It can and should be differentiated from similar problems in this general field raised under other statutes. The question of interpretation is a narrow one, and our decision should be correspondingly narrow." (*Prince* v. *United States* (1957) *supra*, 352 U.S. 322, 325.) Indeed, on this ground the court itself distinguished the *Prince* case from *Morgan* v. *Devine*. (*Id.* at p. 328, fn. 9.) The *Morgan* rule is still living law. It has consistently been followed in the federal circuit courts (see e.g., *Clark* v. *United States* (4th Cir. 1959) 267 F.2d 99, 101 [1]; *Hamilton* v. *United States* (5th Cir. 1958) 253 F.2d 421, 422 [2]; *Herndon* v. *United States* (4th Cir. 1953) 207 F.2d 412 [1, 2]; *United States* v. *Lynch* (7th Cir. 1947) 159 F.2d 198, 199 [3]; *Doss* v. *United States* (5th Cir. 1946) 158 F.2d 95, affirming *United States* v. *Doss* (W.D. La. 1946) 66 F.Supp. 243, 244-245) and, as just noted, it has recently been recognized by the United States Supreme Court itself.

The fact that such distinguished courts have rejected the so-called "intent and objective test" should not be lightly disregarded. It should compel us, rather, to reconsider our hasty and unnecessary adoption of that "test" in *Neal*, and to strike it from our jurisprudence before further damage is done.

The majority opinion in the case at bench illustrates all too well the errors that will result from continued reliance on the *Neal* formula. In applying the "test" the majority first purport to define the scope and content of defendant's "objective." But the record, as is so often true, is devoid of evidence directed to or even remotely bearing on such a question. Accordingly, the majority are compelled to speculate (*ante*, p. 762) the "only reasonable conclusion" in the circumstances is that "the entry of the hospital and the taking of the air compressor were parts of a continuous course of conduct and *were motivated by one objective*, theft;

---

250, 256 [9] - 257 [10] [339 P.2d 553], and cases there cited.) This is no more than a rule of construction, as is shown by the court's comments in *Ladner* (at pp. 173 and 178 of 358 U.S.) that "There is no constitutional issue presented" and "If Congress desires to create multiple offenses from a single act affecting more than one federal officer, Congress can make that meaning clear."

the burglary, although complete before the theft was committed, *was incident to and a means of perpetrating* the theft.'' (Italics added.) On this basis the majority hold that ''defendant can be punished for either offense but not for both.'' Yet each involved a separate act and each separate act was a complete crime.

This holding, in my view, does violence to both the letter and the spirit of our statutes, to precedent, and to sound penological practice. Penal Code section 459 provides in relevant part that ''Every person who enters any house [or other enumerated structure] . . . with intent to commit grand or petit larceny or any felony is guilty of burglary.''[5] As this court observed in a leading decision construing section 459 (*People* v. *Barry* (1892) 94 Cal. 481, 482 [29 P. 1026]), ''This section of the code is clear and concise, and its meaning obvious. By its express terms, the offense is perfect and complete when the entry is made with the intent to commit grand or petit larceny, or any felony.'' This fundamental principle of our law of burglary has never been questioned, and remains equally in vigor today. (See e.g., *People* v. *Michaels* (1961) 193 Cal.App.2d 194, 198 [1] [13 Cal.Rptr. 900]; *People* v. *Beem* (1961) 192 Cal.App.2d 207, 211 [6] [13 Cal. Rptr. 238]; *People* v. *Roy* (1959) 175 Cal.App.2d 551, 554 [1] [346 P.2d 415]; *People* v. *Davis* (1959) 175 Cal.App.2d 365, 369 [6] [346 P.2d 248].) Thus, in *People* v. *Morlock* (1956) 46 Cal.2d 141, 146 [5] [292 P.2d 897], we distinguished on this basis the crime of robbery, requiring a specific intent to steal, from that of burglary, ''where the crime is complete when the one accused has entered the house of another with intent to commit *any* felony.''

From this principle (which the majority acknowledge) it follows ineluctably that the *act* which is punished as burglary is simply the defendant's act of entering with the proscribed intent. But an entirely different act must be committed by the defendant before he may be found guilty of grand theft: i.e., the act of feloniously taking and carrying away personal property of another (of a type or value defined in Penal Code section 487) with the specific intent, and without claim of right, to permanently deprive the owner of his interest in such property. (Pen. Code, § 484.) It is manifest that, from a physical standpoint, either act may be committed without

[5]The same language is found in the predecessor to this section, enacted by the first session of the California Legislature. (Stats. 1850, ch. 99, p. 235, amended Stats. 1858, ch. 245, p. 206.)

committing the other. This factual independence is reflected in the law : the cases upholding convictions of grand theft without burglary (i.e., by persons lawfully on the premises, or involving property not taken from a structure listed in Penal Code section 459) are too common to require citation; and as to burglary, it is well settled that an entry with the proscribed intent is unlawful even though, because of frustration or voluntary abandonment, the defendant commits no further offense on the premises (*People* v. *Clifton* (1957) 148 Cal. App.2d 276, 279 [3] [306 P.2d 545] ; *People* v. *Stewart* (1952) 113 Cal.App.2d 687, 691 [6] [248 P.2d 768] ; *People* v. *Sturman* (1942) 56 Cal.App.2d 173, 180-181 [7] [132 P.2d 504]), and hence that to support a conviction of burglary the evidence need not show that the defendant also committed theft (*People* v. *Murphy* (1959) 173 Cal.App.2d 367, 373 [4] [343 P.2d 273] ; *People* v. *Garrow* (1955) 130 Cal.App.2d 75, 84 [5] [278 P.2d 475] ; *People* v. *Rhodes* (1934) 137 Cal.App. 385, 391 [6] [30 P.2d 1026] ; *People* v. *McGowan* (1932) 127 Cal.App. 39, 41-42 [1] [14 P.2d 1036].) The offenses of burglary and grand theft are therefore committed neither "by the same act" nor by an "act . . . essential to both" (*In re Chapman* (1954), *supra,* 43 Cal.2d 385, 390 [7]) ; rather, they are committed by separate and distinct acts and so are separately punishable "even though those acts were closely connected in time and were part of the same criminal venture" (*id.* at p. 389 [6]).

Prior to *Neal* the rule just stated had been uniformly applied by our courts for more than half a century.[6] Some of these cases involved burglary and theft, some involved burglary and robbery, and in some a third offense such as assault was also present; but in each it was correctly held that the various judgments of conviction rested upon separate and distinct criminal acts and hence that separate punishments

---

[6]In addition to the cases expressly disapproved by the majority (*ante,* p. 762) see also the following, which the majority appear to have overlooked: *People* v. *Goodman* (1958) 159 Cal.App.2d 54, 60 [4a] - 62 [4b] [323 P.2d 536] ; *People* v. *Miller* (1954) 129 Cal.App.2d 305, 309 [11, 12] [276 P.2d 846]; *People* v. *Taylor* (1935) 4 Cal.App.2d 214, 218 [8] [40 P.2d 870] (dictum) ; *People* v. *Marzec* (1930) 108 Cal.App. 264, 266-267 [3] [291 P. 600]; *People* v. *DeHoog* (1929) 100 Cal.App. 235, 242 [3] [279 P. 1067]; *People* v. *Shaffer* (1927) 81 Cal.App. 752, 754-755 [1] [254 P. 666]. And in a number of cases separate punishments have been imposed in like circumstances without any discussion of Penal Code section 654: *People* v. *Jefferson* (1960) 182 Cal.App.2d 439 [6 Cal.Rptr. 147]; *People* v. *Ford* (1955) 133 Cal.App.2d 695 [284 P.2d 836]; *People* v. *McGill* (1927) 82 Cal.App. 98 [255 P. 261].

could be imposed. Indeed, the imposition of separate (either concurrent or consecutive) sentences after convictions of burglary and grand theft or robbery has consistently been the practice of our trial courts, both in the reported decisions and in many more cases that were never appealed.

The *Neal* decision, of course, did not involve such distinct acts as burglary and grand theft. Yet shortly after *Neal* the District Court of Appeal held in *In re Dowding* (1961) 188 Cal.App.2d 418 [10 Cal.Rptr. 392], that section 654 prohibited separate punishments for burglary and robbery committed against the same victim because "the object" of the defendant's course of conduct "was the robbery" (*id.* at p. 423 [7]). The court professed to recognize that "the crime of burglary was complete when petitioner and his codefendants entered the drug store with the intent to rob the druggist," and that "a long line of decisions uniformly hold" that section 654 does *not* prohibit separate punishments in such a case. Nevertheless, the court declined to follow these binding precedents on the asserted ground that "they cannot be squared with" the *Neal* majority's "reasoning"—i.e., the "intent and objective" dictum. In *People* v. *Dykes* (1961) 198 Cal.App.2d 75, 81 [5] [17 Cal.Rptr. 564], and in *People* v. *Brown* (1962) 200 Cal.App.2d 111, 118 [7] [19 Cal.Rptr. 36], the *Dowding* holding was followed without further discussion, as if the "long line of decisions" to the contrary had been expressly overruled in *Neal* or had never even existed. Finally, in *People* v. *Collins* (1962) 203 Cal.App.2d 611, 612 [1] [21 Cal.Rptr. 783], the court rather laconically summed up the situation by saying that the law concerning separate punishments for burglary and grand theft "has undergone extreme changes of late.'"[7] It is upon this shaky foundation that the majority erect today's holding. Once again it would be pru-

---

[7]One may well wonder how many other settled principles of law will now be overturned by the District Courts of Appeal on the theory that they "cannot be squared with" the asserted "reasoning" of the *Neal* dictum. For example, in a series of cases in which the defendant had entered a dwelling with intent to commit a sexual offense and thereafter had sexually attacked an occupant of that dwelling, separate punishments for both burglary and the subsequent sex crime have uniformly been upheld. (*People* v. *Eaton* (1959) 171 Cal.App.2d 120 [339 P.2d 951] [rape], *People* v. *Bias* (1959) 170 Cal.App.2d 502, 508 [4-7] [339 P.2d 204] [Pen. Code, § 288a]; *People* v. *Shields* (1945) 70 Cal.App.2d 628, 636 [2]-637 [4] [161 P.2d 475] [Pen. Code, § 288]; *People* v. *Novo* (1936) 12 Cal.App.2d 525, 528 [2] [55 P.2d 915] [assault].) Will it now be said that the *Neal* dictum overruled, *sub silentio*, these authorities as well?

dent to consider the experience of other courts with this same problem.

As of 40 years ago the editors of Bishop's Criminal Law (9th ed. 1923), volume 1, pages 788-789, could conclude on this point that the authorities "almost unanimously" supported the proposition that "If in the night a man breaks and enters a dwelling house to steal therein, and steals, he may be punished for two offences or one, at the election of the prosecuting power. . . . [A] first count may set out a breaking and entering with intent to steal, and a second may allege the larceny as a separate thing, and thereon the defendant may be convicted and sentenced for both." In so holding in *Morgan* v. *Devine* (1915), *supra,* 237 U.S. 632, the United States Supreme Court observed that "Notwithstanding there is a difference in the adjudicated cases upon this subject, we think the better doctrine recognizes that, although the transaction may be in a sense continuous, the offenses are separate, and each complete in itself." (*Id.* at p. 639.)

Except for today's unique holding there is no longer any substantial "difference in the adjudicated cases" on this issue. As the highest courts of our sister states one after another have held that burglary and larceny are committed by separate and distinct acts and hence that separate punishments may be imposed for each, the rule has become virtually unanimous. A few examples will serve to illustrate this fact.

*Federal Law.* As noted above, early federal cases held that a defendant could be punished but once for burglary and larceny of post office property. (*Munson* v. *McClaughry* (8th Cir. 1912), *supra,* 198 F. 72; *Halligan* v. *Wayne* (9th Cir. 1910), 179 F. 112 [102 C.C.A. 410].) Following the holding to the contrary in *Morgan* v. *Devine* (1915), *supra,* 237 U.S. 632, contemporary federal decisions now authorize separate punishments for such offenses. (*Clark* v. *United States* (4th Cir. 1959), *supra,* 267 F.2d 99, 101 [1]; *Hamilton* v. *United States* (5th Cir. 1958), *supra,* 253 F.2d 421, 422 [2].)

*Pennsylvania.* In the early case of *Commonwealth* v. *Birdsall* (1871) 69 Pa. (19 P.F. Smith) 482, 485 [8 Am.Rep. 283], the court said in dictum that burglary and larceny committed at the same time could not "be punished as separate offences." A similar dictum had appeared in *Stoops* v. *Commonwealth* (1822) 7 Serg. & R. (Pa.) 491, 498 [10 Am.Dec. 482]; and a lower court so held in *Commonwealth* ex rel. *Wendell* v. *Smith* (1936) 123 Pa. Super. 113 [186 A. 810, 811 [1, 2]. But in *Commonwealth* ex rel. *Moszczynski* v. *Ashe*

(1941) 343 Pa. 102 [21 A.2d 920], the Supreme Court of Pennsylvania reconsidered the matter. In a well reasoned opinion the court unanimously rejected its earlier view and held that separate punishments may be imposed for burglary and larceny committed in the course of the same criminal venture. Stressing the factual independence of the acts thus made punishable, the court stated (*id.* at pp. 921-922 [8, 9] [21 A.2d]), "The crime of wilfully and maliciously breaking and entering any building with intent to commit any felony therein is completed when the felon breaks into the building . . . .with the intent above named. . . . Whatever felony is committed *in* the building broken into is separate and distinct from the offense of breaking and entering *into* that building."[8] The rule thus adopted is the rule in Pennsylvania today. (*Commonwealth* ex rel. *Comer* v. *Claudy* (1954) 174 Pa.Super. 494 [102 A.2d 227, 228 [4]-229 [5-7]] ; *Commonwealth* ex rel. *Vanderpool* v. *Burke* (1953) 174 Pa. Super. 88 [99 A.2d 904, 905], and cases there cited.)[9]

*Other Jurisdictions.* An increasing number of states have in recent years adopted the subject rule authorizing separate punishments for burglary and larceny committed in the same criminal transaction: e.g., Maryland,[10] New Jersey,[11] Ohio,[12]

---

[8]The court disapproved its language in the *Birdsall* and *Stoops* decisions on the ground (*id.* at p. 922, fn. 2 [21 A.2d]) that "What was said in each of these two cases on this point was dictum and as *it is contrary to reason* and the great weight of authority, it need not be followed." (Italics added.)

[9]For a parallel development in cases involving double jeopardy rather than double punishment, compare *Triplett* v. *Commonwealth* (1886) 84 Ky. 193 [1 S.W. 84, 8 Ky. L.R. 67] with *Hunt* v. *Commonwealth* [Ky. 1960] 338 S.W.2d 912, 914 [1-6]. The latter *is* in accord with the overwhelming weight of authority in this connection. (See, e.g., *People* v. *Devlin* (1904) 143 Cal. 128, 129-130 [76 P. 900]; *People* v. *Niemoth* (1951) 409 Ill. 111 [98 N.E.2d 733, 736 [1, 3]]; *People* v. *Parrow* (1890) 80 Mich. 567 [45 N.W. 514, 515]; *State* v. *Cowman* (1947) [239 Iowa 56 [29 N.W.2d 238, 240 [3] - 241 [8]]; *Goodwin* v. *State* (1946) 157 Fla. 751 [26 So.2d 898, 899 [2]]; *Cambron* v. *State* (1922) 191 Ind. 431 [133 N.E. 498, 499 [3], 19 A.L.R. 623]; cf. *Grove* v. *Maxwell* (1962) 173 Ohio St. 559 [184 N.E.2d 397, 398 [1]]; 19 A.L.R. 626-631; 31 L.R.A. N.S. 727-730.)

[10]*Williams* v. *State* (1954) 205 Md. 470 [109 A.2d 89, 92 [7, 8] - 94 [9]]; accord, *Vandegrift* v. *State* (1961) 226 Md. 38 [171 A.2d 713, 714 [1]].

[11]*State* v. *Byra* (1942) 128 N.J.L. 429 [26 A.2d 702, 703-704 [1, 2]], affd. (1943) 129 N.J.L. 384 [30 A.2d 49], cert. den. 324 U.S. 884 [65 S.Ct. 1025, 89 L.Ed 1434].

[12]*Wyatt* v. *Alvis* (Ohio App. 1955) 136 N.E.2d 726, 727; cf. *Breese* v. *State* (1861) 12 Ohio St. 146, 152 [80 Am.Dec. 340].

South Carolina,[13] Virginia,[14] and Colorado.[15]

The majority justices of this court (in promulgating their minority view) dismiss these respectable authorities on the asserted ground that none turned on the construction of a statute similar to our Penal Code section 654. While the opinions in these cases do not discuss any such statute, it does not follow that the decisions are entitled to no consideration whatever. The issue posed by section 654 is whether defendant's convictions on Count V (burglary) and Count VI (grand theft) each rest on a separate and distinct "act or omission which is made punishable in different ways by different provisions of this code . . . ." In one context or another, that issue has been considered and resolved in each of the above cited cases from our sister jurisdictions. Typical of the current reasoning of these decisions is the following language from *State* v. *Quatro* (1957) 44 N.J.Super. 120 [129 A.2d 741, 745 [9, 10]] : "A sentence for breaking and entering can be added [to a sentence for larceny or receiving stolen property] . . . , as the former, though perpetrated on the same occasion as the others, *rests on a criminal act distinct from* the larceny and receiving" (italics added).

Before a majority of this court hold, in effect, that convictions of burglary and grand theft do *not* each rest on a separate and distinct "act or omission," some explanation would appear to be due as to why the California rule should be different from that of the rest of the nation. To say that our *law* is different—i.e., that we have section 654 while the other states do not—is not enough. Section 654 does not even come into play until it is shown on the *facts* that a single "act or omission" is being punished more than once. Does the burglar-thief in California commit acts any less distinct in perpetrating his crimes than his counterpart in Pennsylvania, Maryland, New Jersey, or Ohio?

Moreover, the subject rule is also followed in those states which do have statutes similar to our section 654.[16] Thus, in *State* v. *Hutton* (1960) 87 Ariz. 176 [349 P.2d 187, 188-189

---

[13]*Copeland* v. *Manning* (1959) 234 S.C. 510 [109 S.E.2d 361, 362 [1]].

[14]*Robinson* v. *Commonwealth* (1949) 190 Va. 134 [56 S.E.2d 367, 370 [3]] (dictum); cf. *Speers* v. *Commonwealth* (1867) 17 Gratt. (Va.) 570, 574.

[15]*Ex parte Hill* (1937) 101 Colo. 243 [72 P.2d 471, 472 [2] - 473 [5, 6]].

[16]New York, of course, is such a state; but a special statute in that jurisdiction (Penal Law, § 406) expressly authorizes separate punishments for both burglary and any crime committed after entry.

[1-5]], the defendant was given consecutive sentences for burglary and for grand theft committed after entering the burglarized premises. The court stated the question to be "whether the defendant . . . may be legally sentenced for both [burglary and grand theft] when the grand theft was committed in carrying out the original motive for committing the burglary." A statute identical with our section 654 was in force. Obedient to the terms of that statute the court answered the above question in the affirmative, reasoning that "Burglary and theft are two separate and distinct acts." The majority attempt to weaken this decision by emphasizing that the Arizona court "held that only *concurrent* sentences should be imposed in the interests of justice." (*Ante,* pp. 761-762.) The majority, however, fail to mention that the Arizona court modified the judgment to make the sentences run concurrently *only because,* in the exercise of its power to reduce excessive sentences, it deemed the *particular* sentence imposed on that *particular* defendant to be excessive. Thus the court explained that "While we are not prone to disturb the trial court's judgment in the infliction of punishment, we cannot escape the feeling that under the circumstances herein a sentence of 23 to 25 years for a burglary and the stealing of a saddle is excessive." (*Id.* at p. 189 [6] [349 P.2d].) The law of the decision remains, "We rule, therefore, that the defendant could legally be sentenced for both the crimes of burglary and grand theft." (*Id.* at p. 189 [1-5] [349 P.2d].)

Nor has the appearance of the *Neal* decision had any appreciable effect in our sister states. Prior to *Neal* it was held, in a jurisdiction (Utah) having a statute (Utah Code Ann. 1943, § 105-21-32) providing that "no person shall be convicted of more than one crime upon the same facts constituting such crime," that such statute did not prohibit separate punishments for burglary and larceny committed in a single criminal venture. (*Rogerson* v. *Harris* (1947) 111 Utah 330 [178 P.2d 397, 399 [5-7]].) More than a year after *Neal* appeared, the same court was again presented with the question now before us. (*State* v. *Jones* (1962) 13 Utah 2d 35 [368 P.2d 262].) The defendant appealed from "convictions of burglary and larceny allegedly committed at the same place, about the same time." He contended that it was error to sentence him on both charges, relying on a statute (Utah Code Ann. 1953, § 76-1-23) which provided in relevant part as follows: "An act or omission which is made punishable in different ways by different provisions . . . may be punished under

any one . . . but in no case . . . under more than one."
It was held, again unanimously, that such statute, which
is indistinguishable from our section 654, did not prohibit
separate punishments for burglary and larceny. Once more
seeking to discredit a significant decision, the majority assert
that the Utah court relied on its previous holding in *Roger-
son* v. *Harris* "without recognizing that the earlier decision
had involved a statute which was quite different from the one
before us." (*Ante,* p. 762.)[17] Perhaps the court in *Jones*
did not explicitly articulate the differences between the two
statutes. But there can be no doubt that the language of the
statute now before us was there considered in detail and held
inapplicable to convictions of burglary and theft. Distin-
guishing a case (*State* v. *Huntsman* (1949) 115 Utah 283
[204 P.2d 448, 451-452 [8, 9]]) where it was said that a de-
fendant could be convicted and punished but once on charges
of adultery and carnal knowledge arising out of a single act
of intercourse, the court in *Jones* reasoned (at p. 263 of 368
P.2d), "The *Huntsman* case reflects but *one* act accomplished
against one female. In the instant case the facts show 1) a
breaking and entering *and* 2) a larceny. The entering did
not include the larceny and the larceny independently was
something else. Each offense required different acts, whereas
in the *Huntsman* case a *single act* of intercourse constituted a
violation of more than one *provision* of the criminal code."
(Italics in original.) Specifically analyzing the Utah statute
identical with our section 654, the court noted that it "refers
to *one* act," and concluded that "Obviously a burglary in and
of itself is *one* act, requiring no theft, and a larceny is *another*
or second act requiring a theft." (Italics in original.)

To sum up, the majority's holding on the facts in the case
at bench that Penal Code section 654 precludes punishing
defendant for both burglary and grand theft (1) perverts
clearly defined expressions of legislative intent, (2) overrules
without sufficient justification a long and respectable line of
California precedents to the contrary, (3) strikes down an
established sentencing practice of our trial courts, and (4)
runs counter to not only the overwhelming weight of authority
but also the strong current of decisions in our sister juris-
dictions.

[17]It is noteworthy that at the time of the *Rogerson* decision the Utah
statute identical with our section 654 was also in force (then numbered
Utah Code Ann. 1943, § 103-1-22).

For all of the foregoing reasons I would affirm the judgment in its entirety.

McComb, J., concurred.

PETERS, J., Concurring and Dissenting.—The defendant was convicted of eight felonies. The majority affirm seven counts and reverse as to one. I concur in that reversal, but not in the reasons given for it. For reasons hereafter stated I believe all eight counts should be reversed.

The majority opinion fairly states the facts. As there appears, defendant was found in possession of various items of property that had recently (from two days to two months prior to the discovery) been taken from the owners without their consent. Defendant was then charged with two counts of unlawfully taking an automobile (Veh. Code, § 10851), five counts of burglary (Pen. Code, §§ 459, 460), and one count of grand theft (Pen. Code, § 487, subd. 1). He was convicted on all eight. The majority reverse the grand theft conviction, and affirm as to the seven others. As to several of these seven counts, in addition to evidence that the properties involved had been unlawfully taken by someone from the possession of the respective owners, and that the properties were found in the possession of the defendant shortly thereafter, there was other evidence tending to connect defendant to these crimes. This other evidence was either in the form of admissions or consisted of false statements by the defendant as to how he acquired possession. As to these counts, as the majority opinion correctly points out, it has long been held in California that admissions or false explanations sufficiently corroborate the inferences arising from defendant's possession of property recently stolen so as to warrant a conviction (*People* v. *Ransome*, 180 Cal.App.2d 140, 146 [4 Cal.Rptr. 347]; *People* v. *Russell*, 120 Cal.App. 622, 625 [8 P.2d 209]; *People* v. *Scott*, 66 Cal.App. 200, 203 [225 P. 767]). But as to several of the counts, the only evidence introduced by the prosecution in an attempt to connect defendant with the crimes was unexplained possession of recently stolen property.

It has long been the rule in California that evidence of possession of recently stolen property is not, standing alone, sufficient evidence to sustain a conviction. In other words, possession of recently stolen property must be corroborated. (*People* v. *Citrino*, 46 Cal.2d 284, 288 [294 P.2d 32], and

cases cited.) Although not purporting to do so, the majority opinion, in fact, reverses that sound rule of law. The majority state the new rule to be, "Where recently stolen property is found in the conscious possession of a defendant who, upon being questioned by the police . . . remains silent under circumstances indicating a consciousness of guilt, an inference of guilt is permissible. . . ."

By including the phrase "circumstances indicating a consciousness of guilt" the majority imply that something is being added to proof of possession, but in fact nothing is added at all. This is so because the "circumstance" relied on to indicate guilt is silence on the part of defendant. Thus, by this pronouncement the majority are in fact stating that possession of recently stolen goods is alone sufficient to sustain a conviction of burglary unless the accused proves his innocence. To add to possession a negative factor, failure to explain, in fact adds nothing. Failure to explain is just another way of stating that unless the explanation proves innocence the defendant may be found guilty. It is obvious that when a defendant is found in possession of recently stolen goods he either explains his possession or he does not. He either talks or remains silent. If he talks and gives a false explanation he may be found guilty. Of course, if he gives a true explanation that implicates him, he has confessed guilt. If he gives a true explanation that exonerates him, he has proven his innocence. Or he may remain silent. These are the only possible alternatives. The only one that does not sustain a conviction, according to the majority, is where he proves his innocence. Thus, what the majority are really saying is that recent possession of stolen goods, standing alone, is sufficient to sustain a conviction, unless the defendant takes the initiative and proves his innocence. Thus the old well-settled rule that possession alone is not sufficient has been effectively abolished.

*People* v. *Chambers*, 18 Cal. 382, was the first case in California to hold that the possession of stolen property is insufficient, in itself, to sustain the conviction. In that case, the trial court had instructed the jury that if ". . . the defendant was afterwards found in possession of a part of the property stolen, you may find therefrom that he is guilty . . ." of larceny. In reversing the conviction because of this erroneous instruction, the court stated, at page 383, the rationale behind the rule that possession alone is insufficient to convict: "It is well settled that the possession of the fruits of a crime is a

circumstance to be considered in determining the guilt of the possessor, but the authorities seem to hold that this circumstance is not of itself sufficient to authorize a conviction. 'The real criminal . . . may have artfully placed the article in the possession or on the premises of an innocent person, the better to conceal his own guilt; or it may have been thrown away by the felon in his flight, and found by the possessor, or have been taken from him in order to restore it to the true owner, or otherwise have come lawfully into his possession.' . . . Our sense of justice would revolt at the idea of convicting a person under such circumstances; but it is obvious that if the mere possession is sufficient to convict, the innocent are as likely to suffer as the guilty. There are many cases in which an explanation would be impossible; and in such cases to throw the burden of explanation upon the accused would be to slam the door of justice in his face. . . . 'It will be necessary . . . for the prosecutor to add the proof of other circumstances indicative of guilt in order to render the naked possession of the thing, available toward a conviction.' '' Not only does this case hold that possession alone is insufficient for a conviction, but it properly equates naked possession with unexplained possession by stating that if possession alone is sufficient, in effect, the burden is placed upon the accused to explain.

Following the *Chambers* case, there have been numerous decisions upholding as a correct statement of the law to be included in jury instructions that possession alone is not enough to sustain a theft conviction. In addition to the cases disapproved by the majority, the following cases announce the disapproved rule: *People* v. *Rodundo*, 44 Cal. 538; *People* v. *Beaver*, 49 Cal. 57; *People* v. *Clough*, 59 Cal. 438; *People* v. *Fagan*, 66 Cal. 534 [6 P. 394]; *People* v. *Wilson*, 135 Cal. 331 [67 P. 322]. In addition, there are numerous cases in which this rule has been indirectly recognized. (See *People* v. *Russell*, 34 Cal.App.2d 665, 669 [94 P.2d 400] [''It is true that mere possession of property stolen in a burglary recently committed is not sufficient of itself to warrant a finding that the accused committed the burglary . . .'']; *People* v. *Russell, supra*, 120 Cal.App. 622, 625 [''It is also the law that to warrant the conclusion that the accused is guilty of a transaction involving the theft of stolen property there must be, in addition to its possession by the defendant shortly after the commission of the crime, corroborating circumstances . . .'']; *People* v. *McClain*, 115 Cal.App. 505, 508 [1 P.2d 1085] [''It

has long been the rule that possession of stolen property by a defendant, however soon after the crime was committed, is not in itself sufficient evidence upon which to base a verdict of guilt"]; *People* v. *Taylor,* 4 Cal.App.2d 214, 217 [40 P.2d 870] [". . . it is true that the mere possession of stolen property is not sufficient to connect a defendant with the perpetration of the burglary in which the property was taken . . ."]; *People* v. *Citrino, supra,* 46 Cal.2d 284, 288 ["'Possession alone of property stolen in a burglary is not of itself sufficient to sustain the possessor's conviction of that burglary"]; *People* v. *Wells,* 187 Cal.App.2d 324, 328 [9 Cal. Rptr. 384] ["'[defendants' possession of stolen property] constitutes some evidence that they were the burglars but would not be sufficient, standing alone, to sustain a conviction of burglary"]; *People* v. *Ransome, supra,* 180 Cal. App.2d 140, 146. See also 1 Wharton, Criminal Evidence (12th ed. 1955) § 135, p. 256. In accord, 2 Wharton, Criminal Law and Procedure (Anderson ed. 1957) § 411, p. 31. Fricke states that under California law while evidence of possession of stolen property is admissible, "The mere possession of stolen property is not . . . sufficient of itself to justify a conviction. . . ." (Fricke, California Criminal Law (8th ed. 1961) p. 253).)

The rule announced by the majority deprives the defendant of several constitutional and statutory rights. Our state Constitution (art. I, § 13) provides that a defendant cannot be compelled "in any criminal case, to be a witness against himself" but his failure to explain "the case against him" may be commented upon. (See also Pen. Code, §§ 688, 1323, 1323.5.) The right to remain silent is fundamental. The only limitation is that silence may be commented on when the prosecution, in court, has first made out a case against the accused that he should deny. (*People* v. *Talle,* 111 Cal. App.2d 650, 664 [245 P.2d 633]; *People* v. *Sawaya,* 46 Cal. App.2d 466, 471 [115 P.2d 1001].) The majority opinion, by the adoption of this new rule, has quite effectively shifted the burden of proof from the prosecution to the defendant. No longer is such a defendant clothed with the presumption of innocence. Now, in such a situation, the defendant may be presumed guilty unless he proves his innocence. This is so because the majority place on the defendant the positive duty to speak when arrested (long before any "case" has been proved against him). The Constitution (art. I, § 13)

provides, in part: "In criminal prosecutions, in any court whatever, the party accused" shall not be compelled "to be a witness against himself; . . . but in any criminal case, whether the defendant testifies or not, his failure to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury." Thus the Constitution itself fixes the extent to which failure to explain adverse testimony shall affect the defendant—it may be commented on by the prosecution and considered by the court and jury. Such failure to explain, however, is not alone sufficient to convict—it merely strengthens the credibility of the prosecution's evidence, or weakens the credibility of the defense case. But now we find that failure to explain, even at the time of arrest, is sufficient to convict. As already pointed out, such a rule violates the constitutional and statutory safeguards of those accused of crime. There is no legal duty on anyone to explain anything to an arresting officer or to cooperate with the prosecution. As was said in *People* v. *Talle, supra,* 11 Cal.App.2d 650, 664:

"Under a proper interpretation of these quoted provisions, an accused has the right to stand mute, clothed in the presumption of innocence, until the prosecution, at the trial, has made out a prima facie case against him. Until that has been done, it is improper to even comment on his silence." A "prima facie case" means one that contains all the elements of the offense. Thus, the duty to speak does not arise until such a prima facie case has been proved against him. The majority say that defendant must speak at the time of arrest or at the time of trial before a "prima facie case" has been established.

The majority have fallen into the error of holding that the failure to explain incriminating evidence and suspicious circumstances justifies an inference of guilt. The inference arising from silence may corroborate prosecution evidence in the record or it may serve to discredit any defense evidence that may be in the record. But the inference cannot itself supply a deficiency in the proof. This is most clearly illustrated in those cases where the prosecution has produced an accomplice of the defendant and he testifies as to all elements of the crime and implicates the defendant. The accomplice's testimony must be corroborated (Pen. Code, § 1111), just as the fact of possession of recently stolen goods must be corroborated. It has long been settled law that even though

the accomplice testifies to every element of the crime, the failure of the defendant to explain this testimony before the grand or trial jury, although such failure may be commented on, cannot itself constitute sufficient corroboration. In other words, failure to explain is not sufficient corroboration.

In the frequently cited case of *People* v. *Sawaya, supra,* 46 Cal.App.2d 466, two accomplices made complete confessions before the grand jury and at the time of trial. Their stories implicated the defendant as one of the culprits. The defendant offered no testimony either before the grand or trial jury. He kept silent. Justice White, then on the District Court of Appeal, pointed out that the corroborating evidence must do more than merely create a suspicion, citing *People* v. *Kempley,* 205 Cal. 441 [271 P. 478], and *People* v. *Davis,* 210 Cal. 540 [293 P. 32]. The corroborating evidence must, independent of other evidence, he said, directly connect the defendant with the crime charged. The prosecution contended that the silence of defendant, in the face of the inculpatory evidence of the accomplices, constituted sufficient corroboration. In reply to this argument it was stated (at p. 471) :

''While conceding that 'the corroborating evidence is slight,' the attorney general argues that when taken in connection with the fact that at the trial appellant availed himself of his constitutional prerogative (sec. 13, art. I, Const.), and did not take the witness stand to deny either the accusations of the accomplices or the slight corroborative evidence, the latter measures up to the standards prescribed by section 1111, Penal Code. The fact that the constitutional provision provides that in a criminal case, whether or not the defendant testifies, his failure to explain or deny by his testimony any evidence or facts in the case against him may be commented upon by the court or counsel and may be considered by the court or the jury, does not deprive a defendant of his right to stand mute, nor does it relieve the prosecution of the burden of establishing his guilt beyond a reasonable doubt, and by competent and legal evidence. The exercise by a defendant of his constitutional privilege to remain silent and demand that the people make the case against him beyond a reasonable doubt, does not of itself directly and immediately tend to connect him with the commission of the crime charged against him. When a defendant chooses not to explain allegedly incriminatory circumstances of his guilt in the form of testimony offered in corroboration of testimony given by conceded accomplices, and when as a matter of law such corroborative

evidence falls short of the quality and kind demanded by section 1111, Penal Code, this court is given no alternative but to set aside an ensuing conviction based thereon."

Mr. Justice Traynor reviewed this very problem in several cases. In *People* v. *Adamson*, 27 Cal.2d 478 [165 P.2d 3], in discussing the failure of defendant to explain inculpatory evidence, and the effect of the constitutional provision giving the prosecution the right to comment on such failure, it was pointed out that silence in such a situation may support an inference that the testimony before the court is credible, but that the inference can add nothing to that evidence. The inference does not raise a presumption of guilt. At page 489 it was stated:

"It was never intended, of course, that the 1934 constitutional amendment should relieve the prosecution of the burden of establishing guilt beyond a reasonable doubt by admissible evidence supporting each element of the crime. (*People* v. *Sawaya*, 46 Cal.App.2d 466, 471 [115 P.2d 1001]; *State* v. *Callahan, supra*; see Bruce, (One of the draftsmen of the American Bar Association resolution that preceded the adoption of the California provisions), *The Right to Comment on the Failure of the Defendant to Testify*, 31 Mich.L.Rev. 226, 229, 231; 2 Wigmore, *supra*, 179; 4 Cleveland Bar Journal 12; 3 Jour. of Crim. Law and Criminology 770, 774.) Nor can the defendant's silence be regarded as a confession," and a case so holding was disapproved.

Again at page 490 it was stated, "The jury, however, is concerned with the scope and nature of the consideration that it may give defendant's failure to explain or deny incriminating evidence, and in the present case should have been instructed that the defendant's failure to deny or explain evidence presented against him does not create a presumption or warrant an inference of guilt, but should be considered only in relation to evidence that he fails to explain or deny . . . ."

In his concurring opinion in *People* v. *Albertson*, 23 Cal.2d 550, 581 [145 P.2d 7], Justice Traynor pointed out that the prosecution must prove guilt beyond a reasonable doubt, and that the jury may not infer guilt from the failure of defendant to explain damaging testimony. In a Note in 32 California Law Review 317, at pages 318-319, referring to the *Albertson* case, it is stated: "The basic rule of the Anglo-American system of criminal procedure is that a man is assumed to be innocent until proven guilty. This 'presumption of innocence' means that guilt must be proved beyond a

reasonable doubt, and the fact that the accused chooses to remain silent does not reverse this fundamental policy nor lessen the burden of proof necessary for a conviction . . . . [I]t is necessary before an inference of any kind arising from a failure to testify on the part of the defendant may be considered by the jury, that the evidence must be sufficient to take the case to the jury.''

In *People* v. *Ashley,* 42 Cal.2d 246 [267 P.2d 271], at page 268, after citing the *Sawaya* and *Adamson* cases with approval, Justice Traynor sums up the entire argument with the statement :''But the failure to testify will not supply a lacuna in the prosecution's proof'' and again on the next page: ''. . . the failure . . . to testify is not affirmative evidence of any fact, and any inference that can, in the circumstance, be justly drawn therefrom is persuasive rather than probative, lending weight to the evidence presented by the prosecution.''

These cases establish beyond doubt that while failure to explain adverse evidence may raise an inference of credibility of the competent evidence already in the record, such inference cannot supply of itself evidence of guilt. In the accomplice situation, silence alone is not sufficient corroboration even though the accomplice has testified as to every element of the charged offense. But the majority here permit the inference from silence to supply missing evidence. Here, the only evidence before the jury was that certain property had been stolen by a person or persons unknown; that within two days and up to two months after the thefts defendant was found in possession of the stolen property. The missing link is the failure to prove that defendant broke into and entered a building and committed a theft therein. Those missing links are supplied, say the majority, by defendant's failure to explain his possession, i.e., by his silence. As the above cases conclusively establish, the inference arising from failure to explain may, at most, reinforce the credibility of evidence already in the record, but it cannot itself supply any missing elements of the offense charged. (See *People* v. *Simmons,* 28 Cal.2d 699 [172 P.2d 18] ; 35 Cal.L.Rev. 128 where the effect of silence at time of arrest is discussed at length.)

The majority also rely on the accusatory statement rule. The validity of that rule has been questioned, and certainly the courts will not permit abuses of it. (See *People* v. *Briggs, ante,* pp. 385, 409 [24 Cal.Rptr. 417, 374 P.2d 257].)

But there are exceptions to even that rule. One is stated by the majority as follows: "His silence cannot be used against him if it is based on a claim of right to which he is legally entitled." In other words, if the defendant, in the face of accusatory statements, claims his legal right to remain silent no inference is permitted to be drawn from his silence. That is exactly what happened in the instant case. When questioned by the police, in addition to the admissions and false statements already mentioned, the defendant did not remain entirely silent as to the other items of property involved. The facts are correctly stated by the majority as follows: "The police questioned defendant about the property involved in the various counts, telling him it was stolen. *He said that he did not want to discuss the situation, that he was in 'enough trouble already,' and that the police could not help him."* (Italics added.) Certainly, defendant's further silence was based on a "claim of right to which" he was legally entitled. Certainly, this informed the police that he was relying on his fundamental rights. This being so, even if the rule were as stated by the majority, which it is not, it would not be applicable to this case.

There is another important matter that should be discussed. The charges under discussion are charges of burglary. Burglary, of course, requires proof of an unlawful entry into a building with intent to commit larceny, or any felony (Pen. Code, § 459). There is no proof of these important elements of the crimes charged. The only facts proved, at most, are possession of recently stolen goods, and "silence" when questioned by the police. Assuming that some adverse inference can be indulged in from such silence, can that adverse inference be that defendant broke into and entered a building with intent to commit a prohibited crime therein? Can the so-called inference arising from silence supply proof of the basic issue involved? Why does silence, even if defendant were under a duty to speak, which he was not, supply this fundamental defect in the proof? If, when the property was stolen, an assault or murder had been committed, could defendant's silence prove the specific intents required of those offenses? Of course not. No rational basis exists for such an inference, and none exists as to burglary. There is, of course, at least one other crime that could be involved—knowing possession of stolen goods (Pen. Code, § 496 et seq.). According to the majority, the identical facts here proved could support an inference of the commission of that crime. Thus,

the same facts could support an inference of theft, burglary and knowing possession of stolen goods—each of which crimes requires proof of a specific intent, and in each of which the specific intent is quite different. How far can mere surmise and conjecture go? Apparently, the district attorney can now, under such circumstances, charge any one of these offenses at his mere whim or caprice, and may get a conviction without any proof whatsoever of the specific intent involved!

The majority in quoting from *People* v. *Wells, supra,* 187 Cal.App.2d 324, rationalize that there is a duty to speak because "it would have been so easy for him to speak if innocent." The fundamental right to remain mute cannot be treated so cavalierly. Certainly, the new rule will make convictions easier. But the mere fact that a defendant could "easily" prove or disprove a fact, does not create a duty to do so. The presumption of innocence, and the right to remain silent, are not that fragile.

It should also be mentioned that the instructions were hopelessly confused. The jury was first instructed that: "The mere possession of stolen property, however soon after the taking, unexplained by the person having possession, is not sufficient to justify conviction." This is the rule disapproved by the majority. The court then instructed that one found in possession of recently stolen property is "bound to explain such possession," and if he does not, "such conduct is a circumstance that tends to show his guilt." The majority hold that this last instruction embodies the new rule that unexplained possession is sufficient corroboration to justify a finding of guilt. Obviously, the two instructions are contradictory and inconsistent. If unexplained possession must be corroborated, it cannot be corroborated by the lack of an explanation. This error, however, if the majority are correct, favored the defendant. But if the first instruction is correct and the second wrong, as I believe, then defendant was prejudicially injured.

From what has been said, it is my opinion that as to those counts where the only corroboration offered by the prosecution was defendant's failure to explain, the evidence is insufficient as a matter of law. As to those counts corroborated by false explanations or admissions the evidence is sufficient, but they too should be reversed, because, if I am correct, the instructions were hopelessly contradictory and prejudicially erroneous. There is no way of knowing whether the jury's

verdict was predicated on the corroboration, or on the failure to explain. This requires a reversal on all counts.

I would reverse the judgment in its entirety.

Appellant's petition for a rehearing was denied December 19, 1962. Peters, J., was of the opinion that the petition should be granted.