Filed 12/30/14  P. v. Vital CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID VITAL,<br><br>    Defendant and Appellant. | H039160<br>(Monterey County<br> Super. Ct. No. SS110805A) |

Following a jury trial, David Vital was found guilty of forcible sodomy (Pen. Code, § 286, subd. (c)(2)(A))[1] (count one) and sodomy while confined in state prison (§ 286, subd. (e)) (count three) based upon a single act of sodomy upon a cellmate.  The jury also found true three strike allegations (§ 1170.12, subd. (c)(2)) for prior convictions of mayhem with use of a deadly weapon (§§ 203, 12022, subd. (b)), attempted voluntary manslaughter with use of a deadly weapon (§§ 192, subd. (a), 664, 12022, subd. (b)), and torture with the use of a deadly weapon (§§ 206, 12022, subd. (b)).  The trial court sentenced defendant to 25 years to life on count one under the Three Strikes law and it imposed the same sentence on count two but stayed execution of that sentence pursuant to section 654.

On appeal, defendant raises a number of contentions, none of which we find meritorious.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

*Discussion*

A. *Marsden Motion*

Defendant asserts that the judgment must be reversed because the trial court abused its discretion by not substituting counsel following his November 5, 2012 *Marsden* motion and hearing (see *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*)). Defendant contends (1) the trial court failed to conduct an adequate *Marsden* inquiry and (2) the breakdown in communications between himself and defense counsel compelled a substitution of counsel.

1. *Background*

On July 18, 2012, Judge Julie Culver heard and denied a *Marsden* motion brought by defendant.

At a hearing before Judge Mark E. Hood on August 8, 2012, the court continued the case to September 5, 2012 for trial setting. Defendant told the court that he could no longer communicate with his attorney. The court told defendant that "we'll be back on September 5th and your attorney will have an opportunity to meet with you."

During the hearing before Judge Culver on September 5, 2012, the court urged defendant to speak with defense counsel and let him know of any problems. Defendant responded, "I don't trust him, period." The court explained defendant's refusal to speak with his counsel was an insufficient basis for relieving counsel. Defendant threatened that, if defense counsel came near, defendant would "snatch him," "[t]ear his ass up," and "assault him, period."[2]

On November 5, 2012, the day scheduled for trial, defendant appeared with defense counsel before Judge Hood. In light of what had occurred at the September 5,

---

[2] Defendant has not asserted in this appeal that the court abused its discretion by refusing to substitute counsel on July 18, 2012 or prejudicially erred in failing to hold a *Marsden* hearing on August 8, 2012 or September 5, 2012.

2

2012 hearing, the trial court inquired whether, at that time, defendant was asking the court to relieve counsel and appoint another attorney. Defendant indicated he was asking for his counsel to be removed. After a closed hearing, Judge Hood denied defendant's *Marsden* motion.

2. *Governing Law*

"[A]t any time during criminal proceedings, if a defendant requests substitute counsel, the trial court is obligated, pursuant to [the Supreme Court's] holding in *Marsden*, to give the defendant an opportunity to state any grounds for dissatisfaction with the current appointed attorney. (*Marsden*, *supra*, 2 Cal.3d at p. 126.) In turn, if the defendant makes a showing during a *Marsden* hearing that his right to counsel has been ' " 'substantially impaired' " ' (*Marsden*, *supra*, at p. 123), substitute counsel must be appointed as attorney of record for all purposes. ([*People v. Smith* (1993)] 6 Cal.4th 684, 695-696.)" (*People v. Sanchez* (2011) 53 Cal.4th 80, 90.)

"[A] trial court cannot discharge its duty [under *Marsden*] without hearing the reasons for the defendant's belief that his or her attorney has not afforded adequate representation. (*Id*. at pp. 123-124.)" (*People v. Martinez* (2009) 47 Cal.4th 399, 417-418.) Rather, it must "listen to [a] defendant's reasons for requesting different counsel." (*Marsden*, *supra*, 2 Cal.3d at p. 126.) The court must give a defendant "an opportunity to present argument or evidence . . . . [Citation.]" (*Id*. at p. 124.)

"A trial court is required to substitute counsel ' "in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused." ' [Citation.] Alternatively the trial court must substitute counsel where it is demonstrated that counsel and defendant are embroiled in an irreconcilable conflict. (*People v. Abilez* (2007) 41 Cal.4th 472, 488 . . . .) The decision to substitute counsel is within the discretion of the trial court; this court will not find an abuse of discretion unless the trial court's failure to substitute counsel would ' " 'substantially impair' the

3

defendant's right to effective assistance of counsel." ' (*Ibid.*)" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 803.)

3. *Adequate Inquiry by the Court*

Defendant asserts that "the trial court failed to discharge its duty to inquire into the nature of, or reasons for, the communication breakdown or to take other steps to ease [his] concerns."

On November 5, 2012, defendant indicated that he had not communicated with his defense counsel in six months. He represented that he had told the judge who heard his prior *Marsden* motion, which was denied on July 18, 2012, that he had given defense counsel the real names and CDC numbers of witnesses but his counsel had falsely stated that defendant had provided only their nicknames and counsel had been required to search for their real names. Defendant said, "[W]hen he lied in court, that was the clencher right there. There is no reason for that."

Defendant also complained that he had told defense counsel that this was a "fraudulent case" and he was not making a "deal" in this case. Nevertheless, his counsel had presented a plea deal to him.

The court recapped that defendant believed that defense counsel had not spent enough time communicating with him about the case and he had not "followed up on suggested witnesses."

Defendant brought up that he had told his defense counsel that they needed to get his medical file, which would show that he had a problem with his right foot and the foot had required surgery; defendant asserted that it was impossible for him to have lifted "the plaintiff." Defendant also mentioned that "the plaintiff" had two other similar prison cases in which "the plaintiff" was supposedly the victim. Defendant indicated that "a lid" had been put on "the medical records of the plaintiff."

4

The court asked defense counsel to describe his legal background. Defense counsel mentioned, among other things, that he had been a police officer before going to law school.

As to the lack of communication, defense counsel indicated that he had twice tried to see defendant at the CTF[3] without success. Counsel had written a letter to defendant after his first attempt to see defendant. Counsel had tried to see defendant again. Counsel was told by a correctional officer that defendant was refusing to attend his attorney visit. Counsel acknowledged that defendant and he had been out of contact for awhile but he asserted that it was not because he had not tried.

In response to questioning by the court, defense counsel indicated that he had followed up with witnesses or potential witnesses. As to the victim's medical file, defense counsel had attempted to get that information.

When the court asked defendant whether there was anything else, defendant indicated that he would like Judge Hood to rehear his prior *Marsden* motion. Defendant also complained that defense counsel was dealing with too many cases. In addition, he declared that he never would have accepted defense counsel to begin with if he had known that counsel had been a police officer.

The trial court gave defendant ample opportunity to disclose and elaborate upon his grievances with defense counsel. Defendant spoke at length and defense counsel was allowed to respond. The court ascertained the nature of the defendant's dissatisfaction with his counsel; its inquiry was sufficient.

4. *November 5, 2012 Marsden Motion Properly Denied*

Defendant argues that the trial court abused its discretion by not substituting counsel because there had been "a complete breakdown in communication [between

---

[3]     We presume defense counsel was referring to the Correctional Training Facility.

5

defense counsel and him], for an extended period, at a critical juncture . . . ." He does not claim that his defense counsel had performed incompetently prior to the motion.

"A defendant 'cannot simply refuse to cooperate with his appointed attorney and thereby compel the court to remove that attorney.' [Citations.]" (*People v. Clark* (2011) 52 Cal.4th 856, 918.) "[A] defendant may not force the substitution of counsel by his own conduct that manufactures a conflict. [Citation.]" (*People v. Smith*, *supra*, 6 Cal.4th at pp. 696-697.) "A ' " 'lack of trust in, or inability to get along with, an appointed attorney' " ' is an inadequate basis on which to substitute counsel. [Citations.]" (*People v. Clark*, *supra*, at p. 918.) "If a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment, and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law. [Citations.]" (*People v. Jones* (2003) 29 Cal.4th 1229, 1246.) Moreover, " '[a] trial court is not required to conclude that an *irreconcilable* conflict exists if the defendant has not made a sustained good faith effort to work out any disagreements with counsel . . . .' [Citation.]" (*People v. Clark*, *supra*, at p. 913.)

A defendant's complaint that his appointed counsel rarely visits him does not justify substitution of counsel. (*People v. Myles* (2012) 53 Cal.4th 1181, 1208.) "[T]he number of times one sees his attorney, and the way in which one relates with his attorney, does not sufficiently establish incompetence." (*People v. Silva* (1988) 45 Cal.3d 604, 622.)

Although on November 5, 2012, defendant expressed that he was upset with his counsel because counsel had allegedly lied at the earlier *Marsden* hearing, defendant raised the issue of lying during the July 18, 2012 *Marsden* hearing and Judge Culver denied the motion. Instead of speaking with counsel and attempting to work out any problems, defendant threatened his counsel at the September 5, 2012 hearing. On November 5, 2012, Judge Hood impliedly did not find defendant credible with respect to

6

his allegation that his counsel had previously lied to the court. Defense counsel indicated that their lack of contact was due to defendant's recalcitrant refusal to see him. "To the extent there was a credibility question between defendant and counsel at the hearing, the court was 'entitled to accept counsel's explanation.' [Citation.]" (*People v. Smith*, *supra*, 6 Cal.4th at p. 697.)

"[N]ew counsel should not be appointed without a proper showing. . . . The court should deny a request for new counsel at any stage unless it is satisfied that the defendant has made the required showing. This lies within the exercise of the trial court's discretion, which will not be overturned on appeal absent a clear abuse of that discretion." (*People v. Smith*, *supra*, 6 Cal.4th at p. 696.) Defendant has failed to establish that the court abused its discretion by denying his November 5, 2012 *Marsden* motion.[4]

B. *Alleged Ineffective Assistance of Counsel in Cross-examination*

On direct examination, Aaron F. testified that, on the day he moved into defendant's cell, he told defendant that he was "straight" and he was " 'not into males.' " He stated that, prior to the sodomy incident, he told defendant that he was "straight," not bisexual. He testified that he told defendant, " 'Whatever that you're into, I'm not into that kind . . . .' " Aaron F. described defendant as "well-over" 200 pounds and estimated defendant's height to be a little over six feet, one inch. Aaron F. indicated that, before defendant put his penis in Aaron F.'s anus, defendant moved to Aaron F.'s bunk, the lower bunk, and trapped Aaron F. there. Defendant threatened to kill Aaron F. and put his arm around Aaron F.'s neck, and he told Aaron F. what he was going to do to him. When defendant told Aaron F. that either Aaron F. could take off his boxers or defendant

---

[4] The fact that defendant subsequently voluntarily absented himself from trial does not alter our conclusion.

could do it for him, Aaron F. pulled down his boxers because he was afraid and intimidated.

On cross-examination of witness Aaron F., defense counsel asked whether he remembered telling Sergeant Ledesma that he was a homosexual. Aaron F. replied, "No I do not." Defense counsel inquired, "Are you saying you never said that?" Aaron F. answered, "I'm saying I don't recall saying it, and I probably did not. I did not say that. That's what I'm saying."

Sergeant Ledesma subsequently testified for the prosecution. On May 9, 2010, the sergeant was working at the Correctional Training Facility (CTF) in Soledad. Sometime around 7:00 a.m., he helped transport defendant to the Natividad Medical Center for SART testing to find out if a sexual assault had occurred.

On cross-examination, Sergeant Ledesma indicated that the same morning, before transporting defendant, he had interviewed Aaron F. about the alleged sexual assault. The sergeant testified that he had asked, " 'Have you ever engaged in sexual activity with an individual of the same sex before" and Aaron F. had answered "yes."

On redirect examination, Sergeant Ledesma indicated that he had asked Aaron F. questions on a sexual assault questionnaire. The sergeant confirmed that he had asked Aaron F., " 'Have you ever engaged in sexual activity with another individual of the same sex before,' " and Aaron F. had told him, "Yes." The sergeant had checked the "yes" box.

Defendant now argues that defense counsel should have asked Aaron F. about his affirmative answer to Sergeant Ledesma's actual question. Defendant complains that defense counsel tried to impeach Aaron F. with his "prior inconsistent statement" but "got its substance wrong, thereby fumbling the [impeachment] opportunity . . . ."

Defendant maintains that defense counsel's deficient performance undermines confidence in the outcome of the trial since the prosecution's case turned on the credibility of the complaining witness and the prior inconsistent statement went to

8

Aaron F.'s general credibility and his defense of consent. He points out the jury asked for a read back of "Officer Ledesma's testimony, specifically with respect to Ferguson's prior homosexual activity."

To prevail on an ineffective assistance of counsel claim, a defendant must satisfy *Strickland*'s two-part test by establishing both counsel's deficient performance and prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052] (*Strickland*).) As to deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" measured against "prevailing professional norms." (*Id.* at p. 688.) "Judicial scrutiny of counsel's performance must be highly deferential," a court must evaluate counsel's performance "from counsel's perspective at the time" without the "the distorting effects of hindsight," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Id.* at p. 689.)

The prejudice prong requires a defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, *supra*, 466 U.S. at p. 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Ibid*.)

"In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. [Citations.] Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different. [Citation.] This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' [Citation.] The likelihood of a different result must be substantial, not just conceivable. [Citation.]" (*Harrington v. Richter* (2011) 562 U.S. 86, __ [131 S.Ct. 770, 791-792].)

9

Defendant now insists defense counsel should have asked Aaron F. whether he had answered "yes" to the sergeant's actual question because a person's sexual orientation is a different issue than the person's willingness to engage in sexual conduct with a member of the same sex. While technically true, those two circumstances are closely related. If Aaron F. had viewed his answer to the sergeant's question about prior same-sex conduct as an admission of homosexuality and answered "yes" to the defense counsel's question on cross-examination, such potential testimony would have aided the defense's consent argument more than a "yes" answer to the cross-examination question now proposed by defendant. It is mere speculation to suppose that Aaron F. would have denied answering "yes" to the sergeant's actual question and thereby opened himself to impeachment of his credibility. Further, defense counsel's follow-up question elicited a somewhat equivocal answer from Aaron F. regarding what he had told the sergeant. Defendant has not established his trial counsel rendered ineffective assistance by his manner of questioning the witness. Moreover, by later eliciting the sergeant's testimony, defense counsel was able to present the very evidence of Aaron F.'s answer to the sergeant's question about same-sex activity, which arguably tended to undercut Aaron F.'s testimony indicating that he told defendant that he was "straight" and the sodomy was forcible.

"[N]ormally the decision to what extent and how to cross-examine witnesses comes within the wide range of tactical decisions competent counsel must make. [Citation.]" (*People v. Cleveland* (2004) 32 Cal.4th 704, 746; see *People v. McDermott* (2002) 28 Cal.4th 946, 993 [manner of cross-examination is matter within counsel's discretion and rarely implicates ineffective assistance of counsel].) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more

10

appropriately resolved in a habeas corpus proceeding.  [Citations.]"  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  The appellate record does not affirmatively establish that defense counsel's manner of questioning of Aaron F. was not a reasonable tactical choice and counsel acted deficiently.

Defendant also fails to demonstrate prejudice.  The appellate record indicates that the court complied with the juror's request to hear Sergeant Ledesma's testimony again and shortly thereafter the jury returned with their verdicts.  The sergeant fully testified about Aaron F.'s answer to the question about prior same-sex sexual activity and the jury appears to have been well aware of that testimony.  In addition, as indicated, Aaron F.'s reply to defense counsel's follow-up question concerning his statement to the sergeant was somewhat equivocal.  It is not reasonably probable that a defendant would have obtained a more favorable result had defense counsel directly cross-examined Aaron F. about his answer to the sergeant's specific question.

C.  *Two Convictions Based upon Single Act of Sodomy*

Defendant asserts that dual convictions for a single act of sodomy are contrary to state law and violate his constitutional rights to equal protection and against double jeopardy.  He also claims that defense counsel rendered ineffective assistance by failing to object to the dual convictions on those grounds.  We find no merit in these contentions.

1.  *State Law*

a.  *Sections 954 and 654*

Defendant first suggests that section 954 allows a prosecutor to charge alternate theories of criminal liability but ultimately precludes more than one conviction for a single offense.  Section 954 states in part:  "An accusatory pleading may charge two or more different offenses connected together in their commission, or *different statements of the same offense* or two or more different offenses of the same class of crimes or offenses, under separate counts . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the *defendant may be*

*convicted of any number of the offenses charged*, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court . . . ." (Italics added.)

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." (§ 954, italics added; *People v. Ortega* (1998) 19 Cal.4th 686, 692 . . . .)' (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034 . . . .) Section 954 generally permits multiple conviction. Section 654 is its counterpart concerning punishment. It prohibits multiple punishment for the same 'act or omission.' When section 954 permits multiple conviction, but section 654 prohibits multiple punishment, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited. (*People v. Ortega*, *supra*, at p. 692; *People v. Pearson* (1986) 42 Cal.3d 351, 359-360 . . . .)"[5] (*People v. Reed* (2006) 38 Cal.4th 1224, 1226-1227.)

The law with respect to multiple conviction has evolved. In *People v. Pearson*, *supra*, 42 Cal.3d 351, the California Supreme Court stated with regard to section 654: "This court has long struggled with the problem of permitting multiple convictions while protecting the defendant from multiple punishment. Some of our earlier decisions held that the imposition of concurrent sentences sufficiently protected the defendant from multiple punishment because he would be serving each of his sentences simultaneously. (See, e.g., *People v. Kynette* (1940) 15 Cal.2d 731, 761-762 . . . .) In other cases, however, we refused to affirm multiple convictions because of the possibility that such

---

[5]     "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

convictions would disadvantage the defendant when the Adult Authority fixed the date he would ultimately be released from prison. [Citations.] In *Neal v. State of California* [(1961)] 55 Cal.2d 11, we went so far as to indicate that multiple convictions were invalid per se. (*Id.* at p. 19 . . . ['If only a single act is charged as the basis of the multiple convictions, only one conviction can be affirmed'].) [¶] Our later cases, however, reaffirmed that section 654 bars multiple punishment, not multiple conviction. (*People v. Tideman* (1962) 57 Cal.2d 574, 586-587; *People v. McFarland* (1962) 58 Cal.2d 748, 762-763 . . . .)" (*Id.* at p. 359.)

"A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' (*People v. Montoya*, *supra*, 33 Cal.4th at p. 1034.) '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' (*People v. Lopez* (1998) 19 Cal.4th 282, 288 . . . .)" (*People v. Reed*, *supra*, 38 Cal.4th at p. 1227.) "When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed. [Citations.]"[6] (*People v. Sanders* (2012) 55 Cal.4th 731, 736.)

---

[6] "The question whether one offense is necessarily included in another arises in various contexts. A common one is deciding whether a defendant charged with one crime may be convicted of a lesser *uncharged* crime." (*People v. Reed*, *supra*, 38 Cal.4th. 38 Cal.4th at p 1227.) "Two tests have traditionally been applied in determining whether an *uncharged* offense is necessarily included within a charged offense—the statutory or legal 'elements' test and the 'accusatory pleading' test. 'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former. [Citation.]' (*Reed*, *supra*, at pp. 1227-1228.)" (*People v. Sloan* (2007) 42 Cal.4th 110, 116-117.) (continued)

13

Assuming that forcible sodomy as defined by section 286, subdivision (c)(2), and sodomy in a correctional facility as defined by section 286, subdivision (e) are separate offenses, neither is a necessarily included offense of the other based on their elements. Therefore, the dual convictions in this case do not fall within the judicial exception to the general statutory rule permitting multiple convictions.

Consequently, the pivotal question, not answered by section 954, is whether the types of criminal conduct described in subdivisions of section 286 are merely different statements of the "same offense" or different offenses. It is clear that a defendant may not suffer multiple convictions of the same offense for a single act. (See, e.g., *People v. Coyle* (2009) 178 Cal.App.4th 209, 217-218 [defendant improperly convicted of three counts of murder for killing one person]; *People v. Ryan* (2006) 138 Cal.App.4th 360, 364-371 [defendant improperly conviction of more than one offense of forgery with respect to a single instrument because various subdivisions of section 470 described different ways of committing the same offense].) On the other hand, as a general rule, a person may be convicted of distinct and separate crimes based on the same conduct. (See, e.g., *People v. Benavides* (2005) 35 Cal.4th 69, 97-98 [upholding conviction for lewd conduct with a child based on same evidence that defendant raped and sodomized the child].) We discuss below whether, as a matter of statutory construction, section 286 states a unitary statutory crime of sodomy.

b. *People v. Craig*

Defendant invokes *People v. Craig* (1941) 17 Cal.2d 453 (*Craig*), which held that a defendant could not be convicted of multiple rapes based on one act of sexual

The California Supreme Court has held that "[c]ourts should consider the statutory elements and accusatory pleading in deciding whether a defendant received notice, and therefore may be convicted, of an *uncharged* crime, but only the statutory elements in deciding whether a defendant may be convicted of multiple *charged* crimes." (*People v. Reed*, *supra*, at p. 1231.)

14

intercourse under former section 261. At that time, statutory rape was described by a subdivision of the rape statute rather than by a separate statute. Defendant Craig was convicted of two counts of rape based upon "a single act of intercourse committed without the consent and against the will of a sixteen year old girl." (*Craig*, *supra*, at p. 454.) The first count charged forcible rape under former section 261, subdivision 3, and the second count charged statutory rape under former section 261, subdivision 1.[7] (*Craig*, *supra*, at pp. 454-455.) The issue as framed was "the propriety of entering separate judgments and sentences for both forcible and statutory rape, charged under separate counts, when but a single act of sexual intercourse has been committed." (*Id.* at p. 455.)

The Supreme Court in *Craig* stated: "Section 264 of the Penal Code prescribes a punishment of 'not more than fifty years' in the state prison for rape committed in violation of *any* of the subdivisions of section 261. In the case of statutory rape (subd. 1, sec. 261), it also provides for an alternative county jail punishment. The trial court, however, by its 'judgments' has sentenced defendant on both counts of the information to the state prison."[8] (*Craig*, *supra*, 17 Cal.2d at p. 458.) The court determined: "The

_____

[7] Former section 261 described six means of committing rape. It provided in pertinent part: "Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances: [¶] 1. Where the female is under the age of eighteen years; . . . 3. Where she resists, but her resistance is overcome by force or violence . . . ." (Stats. 1913, ch. 122, § 1, pp. 212-213.)

[8] As amended in 1923, former section 264 stated: "Rape is punishable by imprisonment in the state prison for not more than fifty years, except where the offense is under subdivision one of section two hundred six-one of the Penal Code [unlawful sexual intercourse with minor], in which case the punishment shall be either by imprisonment in the county jail for not more than one year or in the state prison for not more than fifty years, and in such case the jury shall recommend by their verdict whether the punishment shall be by imprisonment in the county jail or in the state prison; *provided*, that when the defendant pleads guilty of an offense under subdivision one of section 261 of the Penal Code the punishment shall be in the discretion of the trial court, either by imprisonment (continued)

15

'judgments' entered by the trial court should be modified to the extent of consolidating them into a single judgment. . . . Such modification will serve to preclude the dual judgments of the trial court from hereafter working any possible disadvantage or detriment to the defendant in the later fixing of his definite term by the State Board of Prison Terms and Paroles." (*Id*. at pp. 458-459.)

Although *Craig* did not mention section 654, its reasoning was as follows: "The authorities have set down certain rules or tests whereby it may generally be determined whether one or more offenses result from a single act or transaction. Frequently, the test is stated to be 'the *identity of the offenses* as distinguished from the identity of the transactions from which they arise. A defendant may be convicted of two separate offenses arising out of the same transaction when each offense is stated in a separate count and when the two offenses differ in their necessary elements and one is not included *within the other.*' [Citation.] Where, as here, the charge and proof disclose a *single* act of intercourse resulting from *force* employed upon a *minor,* but one punishable rape is consummated, for the proof, though dual in character, necessarily crystallizes into one 'included' or identical offense." (*Craig*, *supra*, 17 Cal.2d at p. 457.)

In *People v. Smith* (1950) 36 Cal.2d 444, 448, the California Supreme Court cited *Craig* in discussing section 654: "Section 654 prohibits double punishment for the commission of a single act [citations], but it does not prohibit convictions for different offenses arising out of a single act unless one is necessarily included within the other. (Pen. Code §§ 954, 1023; *People v. Craig*, 17 Cal.2d 453, 457 . . . ; *People v. Kynette*, 15 Cal.2d 731, 761-762 . . . .)" (*People v. Smith*, *supra*, at p. 448.) In *In re Hess* (1955) 45 Cal.2d 171, the Supreme Court stated with respect to *Craig*: "Although it was stated in the *Craig* case that the six subdivisions of section 261 of the Penal Code 'merely define

---

in the county jail for not more than one year or in the state prison for not more than fifty years." (Stats. 1923, ch. 130, § 1, pp. 271-272.)

16

the circumstances under which an act of intercourse may be deemed an act of rape; they are not to be construed as creating several offenses of rape based upon that single act' [citation], that statement must be read in light of the problem then before the court, that is, whether the defendant could be doubly punished for a single act. Under section 654 of the Penal Code it is clear that double punishment would be improper [citations], regardless of whether there is but one offense or six different offenses of rape." (*In re Hess*, *supra*, 45 Cal.2d. at p. 174.) In a subsequent case, the court recognized that "[t]he rule that concurrent sentences for crimes based on one act or indivisible transaction do not constitute multiple punishment [citations] has been rejected by many decisions, commencing as early as *People v. Craig*, (1941) 17 Cal.2d 453, 458 . . . , that modify judgments or reverse them in part to remove the effect of such concurrent sentences. [Citations.]" (*In re Wright* (1967) 65 Cal.2d 650, 652.)

Nevertheless, *Craig* has not been regarded as merely an early section 654 case but as in effect a case of statutory construction of the former rape statute. The California Supreme Court has reiterated in various contexts that "[t]he subdivisions of section 261 do not state different offenses but merely define the different circumstances under which an act of intercourse constitutes the crime of rape. *People v. Craig*, 17 Cal.2d 453, 455 110 P.2d 403." (*People v. Collins* (1960) 54 Cal.2d 57, 59; see *People v. Maury* (2003) 30 Cal.4th 342, 427 ["[R]ape by means of violence is *not* a different offense from rape by means of force or fear; these terms merely describe different circumstances under which an act of intercourse may constitute the crime of rape. [Citation.]"].)

Courts have continued to apply *Craig*'s remedy of consolidating multiple convictions of the same crime committed in various ways against one victim. (See, e.g., *People v. Coyle*, *supra*, 178 Cal.App.4th at p. 218 [consolidating three murder convictions].) In *People v. Smith* (2010) 191 Cal.App.4th 199, the defendant was "charged with, and the jury found him guilty of, two counts of rape—rape of an intoxicated woman *and* rape of an unconscious woman" based upon a single act sexual

intercourse.  (*Id*. at p. 205.)  The court modified the judgment to strike a rape count, stating that "[b]oth convictions cannot stand because 'only one punishable offense of rape results from a single act of intercourse, though it may be chargeable in separate counts when accomplished under the varying circumstances specified in the subdivisions of section 261 of the Penal Code.'  (*People v. Craig*, (1941) 17 Cal.2d 453, 458 . . . .)"[9] (*Ibid*.)

c.  *Continuing Viability of People v. Craig*

*Craig* may survive as a case of statutory interpretation.  Where the Legislature enacts a law defining a unitary crime and its subdivisions merely describe various alternative means of committing that crime, the subdivisions do not state separate crimes. A different result obtains, however, when the Legislature intends the subdivisions of a criminal law to state separate crimes.  (See, e.g., *People v. Phillips* (2010) 188 Cal.App.4th 1383, 1396-1397 ["section 647.6, subdivisions (a)(1) and (2) have the same goal to protect children from sexual predators who are motivated by an unnatural or abnormal sexual interest in children" but "they are clearly separate crimes"]; *People v. Ledesma* (1997) 16 Cal.4th 90, 97 [1982 amendments to § 245 created "additional

---

[9]    We question but do not resolve the continued validity of *Craig*, *supra*, 17 Cal.2d 453 with respect to current rape law in light of *People v. Gonzalez* (2014) 60 Cal.4th 533 (*Gonzalez*).  We note that the language and structure of section 264 is different than the language and structure of former 264 in effect at the time *Craig* was decided. Section 264 now provides in part:  "(a) Except as provided in subdivision (c), rape, as defined in Section 261 or 262, is punishable by imprisonment in the state prison for three, six, or eight years. [¶] . . . [¶] (c)(1) Any person who commits rape in violation of paragraph (2) of subdivision (a) of Section 261 upon a child who is under 14 years of age shall be punished by imprisonment in the state prison for 9, 11, or 13 years. [¶] (2) Any person who commits rape in violation of paragraph (2) of subdivision (a) of Section 261 upon a minor who is 14 years of age or older shall be punished by imprisonment in the state prison for 7, 9, or 11 years."

categories of felonious assault, including separate crimes of assault with a firearm and assault on a peace officer with a firearm"].)

Recently, in *Gonzalez*, *supra*, 60 Cal.4th at page 535, the California Supreme Court considered a similar question to the one presented in this case, namely "whether a defendant may, consistently with Penal Code section 954, be convicted of both oral copulation of an unconscious person (§ 288a, subd. (f)) and oral copulation of an intoxicated person (*id.*, subd. (i)) based on the same act." (*Ibid.*, fn. omitted.) The appellate court in *Gonzalez* had understood *Craig* as precluding multiple convictions for offenses under section 288a. (*Gonzalez*, *supra*, at p. 535.) The Supreme Court concluded: "*Craig* is distinguishable, the two statutory subdivisions at issue here describe different offenses, and defendant may properly be convicted of, although not punished for, both. [Citations.]" (*Ibid.*)

The Supreme Court began its analysis by recognizing that legislative intent controls whether a statute states a single or multiple offenses. " 'In California all crimes are statutory and there are no common law crimes. Only the Legislature and not the courts may make conduct criminal.' [Citations.] It follows that the determination whether subdivisions (f) and (i) of section 288a define different offenses or merely describe different ways of committing the same offense properly turns on the Legislature's intent in enacting these provisions, and if the Legislature meant to define only one offense, we may not turn it into two." (*Gonzalez*, *supra*, 60 Cal.4th at p. 537.)

The Supreme Court indicated that the holding in *Craig*, *supra*, 17 Cal.2d 453 was limited: "*Craig* did not hold that a single Penal Code section could never comprise multiple offenses; it simply concluded, based on the wording and structure of the statute, that former section 261 set forth only one offense that could be committed under several different circumstances, as described in its several subdivisions. This conclusion flowed naturally from the wording and structure of former section 261. Indeed, *Craig* acknowledged that ' "[a] defendant may be convicted of two separate offenses arising out

19

of the same transaction when each offense is stated in a separate count and when the two offenses differ in their necessary elements and one is not included *within the other.*" ' (*Craig*, *supra*, 17 Cal.2d at p. 457)" (*Gonzalez*, *supra*, 60 Cal.4th at p. 539.)

The Supreme Court in *Gonzalez* contrasted section 288a with former section 261. "Section 288a is textually and structurally different from former section 261. Subdivision (a) of section 288a defines what conduct constitutes the act of oral copulation. Thereafter, subdivisions (b) through (k) define various ways the act may be criminal. Each subdivision sets forth all the elements of a crime, and each prescribes a specific punishment. Not all of these punishments are the same. That each subdivision of section 288a was drafted to be self-contained supports the view that each describes an independent offense, and therefore section 954 is no impediment to a defendant's conviction under more than one such subdivision for a single act." (*Gonzalez*, *supra*, 60 Cal.4th at p. 539.) These differences are also true for section 286.

The language of section 286 does not parallel the language of former section 261. Moreover, when *Craig* was decided, a violation of former section 261 was punishable under indeterminate sentencing law so defining a unitary offense of rape made sense. In contrast, section 286's language does not describe a unitary offense of sodomy that is committed under any of variously described circumstances. Rather, section 286 defines the act of sodomy in subdivision (a) and then describes, in various other subdivisions, the elements of criminal conduct involving the act of sodomy and the applicable determinate punishments.[10]

---

[10]     At oral argument, defendant pointed, for the first time, to uncodified statutory language contained in the 1991 statute amending section 286 as support for his argument that there is a unitary crime of sodomy. That legislative declaration stated: "[I]t is the Legislature's intent in enacting this act to include all of the elements of the crime of sodomy in one code section." (Stats. 1991, ch. 144, § 3, p. 1353.) Section 1 of that 1991 statute amended section 286 by adding the second sentence to subdivision (a), which language previously had been set forth in section 287, and making other nonsubstantive (continued)

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent.' [Citations.] The plain meaning controls if there is no ambiguity in the statutory language. [Citation.]" (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.) "When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning. [Citation.]" (*People v. Trevino* (2001) 26 Cal.4th 237, 242.)

We conclude that each subdivision of section 286 describing the elements of criminally punishable conduct constitutes a separate and distinct crime of which a

changes. (Stats. 1991, ch. 144, § 1, pp. 1351-1353; see Stats. 1975, ch. 71, § 9, p. 134 [former § 287]; former § 287 as enacted in 1872.) As amended in 1991, subdivision (a) of section 286 provided (and still provides): "Sodomy is sexual conduct consisting of contact between the penis of one person and the anus of another person. Any sexual penetration, however slight, is sufficient to complete the crime of sodomy." (Stats. 1991, ch. 144, § 1, p. 1351.) Section 2 of that 1991 statute repealed section 287. (Stats. 1991, ch. 144, § 2, p. 1353.) Defendant places undue emphasis on the declaration of legislative intent in enacting the 1991 statute in that the Legislature's focus was on clarifying and consolidating the definition of the act of sodomy and not on whether or not the subdivisions of section 286 proscribing various conduct involving an act of sodomy each stated a separate crime. (See Legis. Counsel's Dig., Assem. Bill No. 419 (1991-1992 Reg. Sess.) 4 Stats. 1991, Summary Dig., pp. 73-74.) Before the 1975 amendments of former section 286, the section had criminalized "the infamous crime against nature, committed with mankind or with any animal." (Stats. 1952, 1st Ex. Sess., ch. 23, p. 286; see former § 287 as enacted in 1872.) After the 1975 amendments, sodomy between consenting adults who were not incarcerated was not a crime but forcible sodomy and other proscribed conduct involving an act of sodomy were criminal and subject to various punishments. (See Stats. 1975, ch. 877, § 1, pp. 1957-1958; Stats. 1975, ch. 71, §§ 7, 9, pp. 133-134.)

defendant may be convicted. Of course, section 654 continues to protect defendants against multiple punishment. In this case, defendant was not subjected to multiple punishment. The trial court stayed execution of the sentence on count two (§ 286, subd. (e)) pursuant to section 654.

In light of our conclusion that dual convictions did not violate California statutory law, we find it unnecessary to resolve the People's contention that *Craig*, *supra*, 17 Cal.2d 453 "created an exception to Penal Code section 954 that conflicts with its express language."

2. *Equal Protection*

Defendant asserts that, as a matter of equal protection, section 286 must be construed to parallel section 261 and state only a single offense. He argues that there is "no rational basis for greater culpability to attach to a single act of unlawful anal intercourse than to a single act of unlawful vaginal intercourse."

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)." (*City of Cleburne, Tex. v. Cleburne Living Center* (1985) 473 U.S. 432, 439 [105 S.Ct. 3249].) But "the equal protection clause does not prevent the legislature from recognizing 'degrees of evil' [citation]" and " 'the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.' [Citation.]" (*Skinner v. Oklahoma* (1942) 316 U.S. 535, 540 [62 S.Ct. 1110]; see *People v. Guzman* (2005) 35 Cal.4th 577, 591.) "It is both the prerogative and the duty of the Legislature to define degrees of culpability and punishment, and to distinguish between crimes in this regard. [Citation.] . . . Equal protection analysis does not entitle the judiciary to second guess the wisdom, fairness, or logic of the law. (*Heller v. Doe* (1993) 509 U.S. 312, 319, 113 S.Ct. 2637 . . . .)" (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)

22

"When conducting rational basis review, [courts] must accept any gross generalizations and rough accommodations that the Legislature seems to have made. A classification is not arbitrary or irrational simply because there is an 'imperfect fit between means and ends.' (*Heller*, *supra*, 509 U.S. 312, 321.)" (*Id.* at p. 77.)

" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) We have already observed that general language and structure of the former rape statute and the sodomy statue are not analogues. We also question the continued validity of *Craig* with respect to current rape law. (See fn. 9, *ante*.)

In any case, there is no counterpart to section 286, subdivision (e), in section 261, criminalizing the participation in an act of sodomy while confined in any state prison. A person convicted of forcible sodomy under section 286, subdivision (c)(2)(A), and sodomy in prison under section 286, subdivision (e), based on one sexual act cannot be similarly situated to a person convicted of rape based on a single act of sexual intercourse because there is no analogous crime of rape committed by means of sexual intercourse while confined in prison. Moreover, under the rational-basis test, "a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' [Citations.]" (*Heller*, *supra*, 509 U.S. at p. 320 [113 S.Ct. 2637].) The legislative choice of making an inmate's participation in sodomy, regardless of consent, a separate crime is rationally related to the legitimate state purpose of maintaining institutional safety and order. (See *People v. West* (1991) 226 Cal.App.3d 892, 898-899; see also *People v. Santibanez* (1979) 91 Cal.App.3d 287, 291.)

Defendant has failed to demonstrate any equal protection violation.

23

3. *Double Jeopardy*

Defendant again insists that "the subdivisions of Penal Code section 286 must be read as encompassing alternative theories or circumstances of a single statutory offense, unlawful sodomy." Based on this premise, he argues that "[d]ual convictions for forcible sodomy and sodomy in a correctional facility . . . violate the sate and federal prohibitions on double jeopardy" even if a conviction is stayed pursuant to section 654.

The double jeopardy prohibition of the Fifth Amendment to United States Constitution, which applies to the States through the Fourteenth Amendment (*Benton v. Maryland* (1969) 395 U.S. 784, 794 [89 S.Ct. 2056]), protects against, among other things, multiple criminal punishment for the same offense in a single proceeding. (*Jones v. Thomas* (1989) 491 U.S. 376, 381 [109 S.Ct. 2522]; *North Carolina v. Pearce* (1969) 395 U.S. 711, 717 [89 S.Ct. 2072], overruled on another ground in *Alabama v. Smith* (1989) 490 U.S. 794, 803 [109 S.Ct. 2201].) California's constitutional protection against double jeopardy (Cal. Const., art. I, § 15) likewise bars multiple punishment for the same offense. (*People v. Seel* (2004) 34 Cal.4th 535, 542.)

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. [Citation.]" (*Blockburger v. United States* (1932) 284 U.S. 299, 304 [52 S.Ct. 180].) The *Blockburger* test nevertheless yields to contrary legislative intent to impose cumulative punishment in a single prosecution. (See *Missouri v. Hunter* (1983) 459 U.S. 359, 368-369 [103 S.Ct. 673].) The purpose of the constitutional protection against multiple punishments under the double jeopardy clause is "to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments. [Citatition.]" (*Jones v. Thomas*, *supra*, 491 U.S. at p. 381.) "Because the substantive power to prescribe crimes and determine punishments is vested with the

24

legislature [citation], the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent [citation]." (*Ohio v. Johnson* (1984) 467 U.S. 493, 499, fn. omitted [104 S.Ct. 2536].) "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." (*Missouri v. Hunter*, *supra*, at p. 366.)

Defendant's double jeopardy argument rests on a faulty premise. Subdivisions (c)(2)(A) and (e) of section 286 do not, as a matter of statutory construction, define the same crime merely committed by different means. Those separate offenses do not meet *Blockburger*'s same elements test. Moreover, defendant was not subjected to multiple punishment for a single act of sodomy because the trial court's stayed punishment on the conviction of sodomy in prison. (See *People v. Osband* (1996) 13 Cal.4th 622, 731.) Consequently, we find defendant's double jeopardy claim to be meritless.

4. *Alleged Ineffective Assistance of Counsel*

Defendant raises an ineffective assistance of counsel claim based upon his counsel's failure to object to the dual convictions on statutory, equal protection, and double jeopardy grounds. Having rejected defendant's challenges to dual conviction, we now reject his related ineffective assistance of counsel claim. Defendant has failed to meet his burden of demonstrating both deficient performance and prejudice to establish such claim. (*Strickland*, *supra*, 466 U.S. at pp. 687-689, 694.)

D. *Alleged Victim's Prison Medical File*

The defense sought discovery of Aaron F.'s prison medical file based on the information and belief that the inmate had made prior complaints of sexual assault and had received treatment for mental health issues. Following an in camera review of that medical file, the trial court found that three of its pages, one of which was minimally redacted, were responsive to defendant's discovery request and not protected by

25

privilege.[11]  It ordered that the parties receive copies of those documents under a protective order.  The released documents relate to only the May 8, 2010 incident.

"Under the Fourteenth Amendment's due process clause, prosecutors must disclose evidence to a criminal defendant when it is ' "both favorable to the defendant and material on either guilt or punishment." [Citations.]  Evidence is "favorable" if it hurts the prosecution or helps the defense.  [Citation.]  "Evidence is 'material' 'only if there is a reasonable probability that, had [it] been disclosed to the defense, the result . . . would have been different.' " ' (*People v. Earp* (1999) 20 Cal.4th 826, 866 . . . ; see also *Brady*[*v. Maryland* (1963)] 373 U.S. 83, 87, 83 S.Ct. 1194.)  Evidence probative of a testifying witness's credibility, including the potential for bias, is evidence favorable to the accused.  (See *United States v. Bagley* (1985) 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481.)" (*People v. Morrison* (2004) 34 Cal.4th 698, 713, 714.)

Here, there is no disagreement that the trial court properly reviewed Aaron F.'s prison medical file in camera.  (See *Pennsylvania v. Ritchie* (1987) 480 U.S. 39, 58 [107 S.Ct. 989].)  Defendant asks this court to independently review the sealed records.  The People have no objection to defendant's request.

We have reviewed the relevant record, including sealed documents, and find no error.

### DISPOSITION

The judgment is affirmed.

---

[11]     This court ordered the trial court to reconstruct and settle the record regarding its in camera review of the alleged victim's medical file.  The settled record was filed under seal.

_____

ELIA, Acting P. J.

WE CONCUR:


_____

BAMATTRE-MANOUKIAN, J.



_____

MIHARA, J.